WADDLE v. SUTHERLAND.

(Division B. Feb. 17, 1930.)

[126 So. 201. No. 28430.]

Friday & Windham, of Booneville, for appellant.

**T. A. Cook,** of Iuka, for appellant.

**W. C. Sweat,** of Corinth, for appellee.

544

J. A. Cunningham, of Booneville, for appellee.

Argued orally by **T. A. Clark**, for appellant, and by **W. C. Sweat** and **J. A. Cunningham**, for appellee.

Anderson, J., delivered the opinion of the court.

Appellant brought this action against appellee in the circuit court of Prentiss county, to recover damages for the loss of both his legs, alleged to have been caused by the negligence of appellee in treating appellant with an X-ray machine for eczema, a skin disease. There was a verdict and judgment for appellee, and from that judgment appellant prosecutes this appeal.

Appellant was suffering with an eczema. Appellee was a practicing physician and surgeon at Booneville, and in the practice of his profession used an X-ray machine for certain ailments. Appellee diagnosed appellant's disease as eczema, and treated him for this disease for several months with the X-ray machine.

Appellant charged in his declaration that appellee had in his office Miss Satterfield, who assisted him in the use of the X-ray machine; that Miss Satterfield did not possess the necessary knowledge and skill to enable her to properly operate the machine; that in treating appellant with the machine, the rays overlapped, causing appellant to receive a double application of the rays, resulting in the burning of his legs; that appellee did not use the watchfulness and care which was necessary in the treatment of appellant with X-rays; that he negligently used more than a common dose of the rays; and that thereby appellant received an X-ray burn on both his legs, necessitating their amputation.

Appellee pleaded the general issue, and gave notice thereunder that he would prove on the trial that appellant was properly treated with X-rays for eczema, with which he was suffering; that a suitable X-ray machine was used for the purpose, and the rays were administered with proper skill and dosage; that if appellant was burned in the administration of the rays, such burns were not the result of negligence on the part of appellee; that if appellant received a third degree burn during his

treatment, such burn was due to appellant's hypersensitiveness to the rays, or to the existence of other unusual conditions unknown to appellee, and which could not have been discovered by the exercise of due care; that appellee's assistant, Miss Satterfield, was competent and skillful in the use of the X-ray machine.

The following facts are undisputed in the evidence: Appellant had eczema; the administration of X-rays is an approved treatment for such ailment; appellee had in his office an X-ray machine of the best type, and was himself skilled in the use thereof, and Miss Satterfield, his assistant, was sufficiently skilled to perform the part she took in administering the X-rays. Beginning in June, 1926, and continuing through that year, and 1927, appellee administered to appellant seven or eight X-ray treatments. After the last treatment appellant developed sores on both of his legs where the X-rays had been administered; at different times during the year 1928 appellee treated these sores without success; and in September, 1928, found it necessary to amputate one of appellee's legs, and in December of that year, the other one.

On the trial appellant introduced appellee as an adverse witness, and also Drs. Maxwell and Strange, experts in the use of the X-ray machine, and appellant and his wife testified in his behalf. Besides his own testimony, appellee introduced Drs. Stacy, McRea, and Cunningham, who testified as experts in the use of the X-ray machine, and Miss Satterfield, his assistant in the use of the machine. All the experts agreed in their evidence that in treatment with an X-ray machine there are three degrees of X-ray burns, first, second, and third; that a first degree burn is a mere redness of the skin, a second degree burn is one where the redness is followed by blisters, and a third degree burn is where the rays have burned through the skin and down into the tissues, and often to the bone, and that a third degree burn is often incurable. The experts also agreed that a third degree

burn could not take place with the right kind of an X-ray machine, properly handled, except through the negligence of the operator, unless the patient was hypersensitive to the rays. The evidence on behalf of appellant tended to show, however, that if the patient had such hypersensitiveness, it would always develop after either the first or second treatment, and never later than the second treatment; while the evidence of the experts on behalf of appellee in a measure tended to conflict with that of the experts for appellant in this respect.

Appellant, as a witness in his own behalf, testified to facts and circumstances which, if true, showed that in his last treatment by appellee he received an overdose of the rays because of their overlapping. Appellant testified that appellee stated at the time that he was going to give him a stronger dose than he had been giving him. Appellant's wife testified that appellee told her that he would probably have to amputate both of appellant's legs, because they were burned, not only where the sores were, but all around; and in that connection, appellee said that the blame for the burns was not on Miss Satterfield, but that he blamed himself—that it was his mistake, and not hers.

The principal ground relied on by appellant for the reversal of the judgment was the giving of the following instruction for the appellee:

"The court further instructs the jury for the defendant that in deciding whether or not the treatment of the plaintiff by the defendant with the X-ray was done in a proper manner and with ordinary care and skill and whether or not there was any negligence on the part of the defendant in the use of the X-ray, you can only consider the testimony of those who themselves possess the skill required to administer such treatments and who are themselves experts in such treatments; and if from the evidence of these experts in such treatments it appears that the treatment administered by Dr. W. H. Sutherland was proper and done in the usual and ordinary

manner in common use by competent physicians using X-ray, then your verdict will be for the defendant, even though you may believe it was an X-ray burn, which necessitated the amputation of the plaintiff's legs.''

Appellant's contention is that this instruction excluded from the consideration of the jury all the evidence in the case except that of the experts, and that it was error in the court to give such an instruction, because there was other evidence than that of the experts which was material, and therefore ought to have been taken into consideration by the jury, along with that of the experts.

The determination of this question depends, in some degree, on whether the court erred in submitting to the jury, at the instance of appellant, the doctrine of res ipsa loquitur. That principle of law was embodied in two instructions given for the appellant. In those instructions the jury were told by the court, in substance, that if the evidence showed that appellant's injuries were the proximate result of X-ray burns inflicted on him by the appellee, and if they further believed from the evidence that when a proper X-ray machine was used with reasonable care, such burns as were received by appellant were not the natural and probable result of the treatment, then the fact that the appellant was so burned, resulting in the loss of his legs, should be taken into consideration by the jury in determining whether or not appellant's injuries were the result of appellee's negligence.

There is a diversity of opinion among the courts as to whether the doctrine of res ipsa loquitur applies in a case of this character. The following cases hold that it does apply: Lewis v. Casenburg, 157 Tenn. 187, 7 S. W. (2d) 808, 60 A. L. R. 254; Shockley v. Tucker, 127 Iowa, 456, 103 N. W. 360; Jones v. Tel. Co., 118 Minn. 217, 136 N. W. 741, 40 L. R. A. (N. S.) 485; George v. Shannon, 92 Kan. 801, 142 P. 967, Ann. Cas. 1916B, 338; Evans v.

Clapp (Mo. App.), 231 S. W. 79; Hamilton v. Harris (Tex. Civ. App.), 223 S. W. 533; Johnson v. Marshall, 241 Ill. App. 80.

A contrary view appears to have been held by the courts of Arkansas, Pennsylvania, Maryland, Virginia, and Indiana. The general rule in actions of tort is that mere proof of the injury complained of raises no presumption of negligence; but there is a class of cases where the circumstances of the occurrence which caused the injury are of such character as to give grounds for the reasonable inference that had due care been employed by the party charged with such care, the thing that happened amiss would not have happened. In such a case the thing that happened speaks for itself; if there is nothing to explain or rebut, the inference that arises from the way in which the thing happened, it may fairly be found to have been occasioned by negligence. Res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence; not that they compel such an inference, but that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking. ''But it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff.'' Sweeney v. Erving, 228 U. S. 233, 238, 33 S. Ct. 416, 418, 57 L. Ed. 815, 818, Ann. Cas. 1914D, 907; 5 Wigmore on Evidence (2d Ed.) section 2509; Gulf & S. I. R. Co. v. Odum, 133 Miss. 543, 98 So. 60.

In 20 R. C. L. 187, the principle is clearly and correctly stated thus: ''More precisely, the doctrine res ipsa loquitur asserts that, whenever a thing which produced

an injury is shown to have been under the control and management of the defendant, and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of injury itself will be deemed to afford sufficient evidence to support a recovery, in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care."

Lewis v. Casenburg was an action for damages resulting from an X-ray burn. The evidence for the plaintiff in that case tended to show that an approved X-ray machine, in the hands of a skillful operator, would not cause a third degree burn, even though the patient was hypersensitive to X-rays, if the operator used reasonable care and skill, because such hypersensitiveness could always be detected before a third degree burn occurred. As stated above, the evidence in the present case tended to establish that same state of facts. In the two instructions given appellant, submitting to the jury the doctrine of res ipsa loquitur, they were simply told that if the evidence showed that state of facts, then there followed the prima facie presumption that the appellant's injury was caused by the negligence of appellee, and that such presumption should be considered, along with the other evidence in the case. We think those instructions embodied a sound principle of law, applicable to the particular facts of this case.

By the instruction given appellee, copied above, the court told the jury, in effect, that in considering and deciding the issues of fact, they were confined alone to the evidence of the experts. By this instruction the court necessarily excluded from the consideration of the jury, not only the doctrine of res ipsa loquitur embodied in the two instructions given appellant, but also the evidence of both appellant and his wife, to the effect that appellant's injuries were the result of a third degree burn, which fact he had admitted to appellant's wife,

along with the statement that such burn was the result of his fault, and not that of Miss Satterfield, his assistant.

It is true that all the instructions given in a case should be read together, and read into each other, if possible. If it can be consistently and intelligently done, the instructions should be construed to modify and add to each other. If, so construed, they embody the principles of law applicable to the case, apparent conflicts in the instructions, considered separately, are harmonized.

On the other hand, if an instruction is given which, in express and positive terms, excludes from the consideration of the jury material evidence, such an instruction is controlling, and is misleading to the jury. There is no reconciling it with the other instructions. We think that it is true of this instruction. In a case depending upon expert testimony alone such an instruction would be proper; but this is not that kind of a case. This is a case where there is nonexpert testimony, as well as expert testimony bearing on the issues. The effect of this instruction was to tell the jury not only to disregard the doctrine of res ipsa loquitur embodied in two of appellant's instructions, but also to disregard the evidence of both appellant and his wife.

We think the instruction is not only erroneous, but calculated to mislead the jury.

We are of opinion that there is no merit in appellant's other assignments of error, and that they are not of sufficient seriousness to call for discussion by the court.

Reversed and remanded.