SANDERS *et ux. v.* SMITH *et al.*

(In Banc.   Nov. 25, 1946.)

[27 So. (2d) 889.   No. 36214.]

Roberson & Luckett and E. M. Yerger, all of Clarksdale, and John T. Smith, of Cleveland, for appellants.

W. W. Simmons, of Cleveland, Maynard, Fitzgerald & Maynard, of Clarksdale, and B. A. Green, of Mound Bayou, for appellees.

554

**L. A. Smith, Sr., J.**, delivered the opinion of the court.

Appellants were the parents of Evelyn Sanders, their ten year old daughter, at the time of the sad and unfortunate events chronicled in this action of damages for the wrongful death of a child, allegedly due to the negligence of appellees connected with a tonsillectomy upon her. The operation was performed by appellee, Dr. Smith, at the hospital of the appellee, Knights and Daughters of Tabor, called The Taborian Hospital, at

Mound Bayou, Mississippi. At the time, Evelyn Sanders was a normal child, who had never before been treated by a doctor. Dr. Smith was employed to perform the operation by appellants, which he did in the operating room of The Taborian Hospital. There was an anesthetist at the hospital named Gladys East, who administered the anesthesia.

The child was put to bed about eleven o'clock in the morning, and the mother went to the room with her, withdrawing then to the reading room. About one o'clock p. m. she was returned to the bed in her room, where the mother went, finding Dr. Smith, Dr. Howard of the hospital staff, and nurses with her. At that time, Evelyn seemed to be all right, and Dr. Smith told the mother to go and get some lunch, that "the baby is all right."

After an uneasy absence of about twenty minutes at an unenjoyed lunch, the mother returned to the hospital and immediately repaired to her daughter's room She noticed that she appeared abnormal, causing the mother forthwith to summon Dr. Smith from the nearby laboratory. He came and felt her pulse, and at once summoned the other doctors and nurses. Oxygen was brought in and administered without favorable results, whereupon Dr. Smith announced that the child was dead. In her testimony, the mother said: "He told me some medical name —I don't recall what it was—that caused her death." Suit was brought against appellees for damages, appellants charging that "a cause of action has accrued to them against said defendants for such damages as they have sustained by reason of the wrongful death of said Evelyn Sanders."

Appellees filed a plea of the general issue and a notice under it of the conventional defense general in such cases, and specific defenses appropriate to the special facts of this particular case. It is not necessary to set them out here. The record shows that at the first term after the filing of the suit, Dr. Smith was present at court, although in the meantime he had moved to Texas,

and for reasons unnecessary to detail a non-suit was taken by appellants, the declaration immediately refiled, and process served then upon him in the renewed suit while he was still in Mississippi. A subpoena could then have been served upon him as a witness, too, had appellants seen fit to do so, but it was not done. Neither is there a deposition from him in the case. The anesthetist was in Africa when the case was tried. No motion for a continuance was made, nor was a deposition from her in the case. The only witness at the trial was the mother, appellant, Ruth Sanders. At the end of her testimony, appellee Smith moved the court ''that there be a directed verdict in favor of Dr. Smith, for the reason that there has been no proof offered of any lack of care or skill . . . all that has been introduced is the fact that he operated on the child, and the child died.'' A similar motion was made by appellee hospital ''for the reason that there is no evidence in this case on which to base a verdict. It has not been shown that the hospital omitted doing anything it ought to have done, and no evidence to show that the hospital did anything it ought not to have done. No negligence has been shown.'' These motions were by the court sustained in a brief statement that ''our courts have held, in the Berryhill v. Nichols case, and in subsequent cases, that to establish liability for a wrongful death, there must be a believable probability rather than a possibility and in view of those cases, I must sustain both motions for a directed verdict.'' The Berryhill et al. v. Nichols case is reported in 171 Miss. 769, 158 So. 470, and at page 773 of 171 Miss., at page 471 of 158 So., appears the following: ''It is essential as an element of liability under our wrongful death statute (Code 1930, Sec. 510) that the negligence complained of shall be the proximate cause, or at least a directly contributing cause, of the death which is the subject of the suit. The negligence, and not something else, must have been the cause which produced or directly contributed to the death. Hamel v. Southern Ry. Co., 113 Miss. 344,

358, 74 So. 276. And, as in other cases, this essential element must be proved as a reasonable probability. To prove no more than that it was a possibility is not a sufficient foundation for the support of a verdict or judgment.''

Judgment was entered in favor of appellees here and appellants brought the case up on appeal. They have assigned only one error, which is, ''Appellants respectfully submit that the trial court erred in sustaining appellee's motion to exclude appellant's evidence and in directing a verdict in favor of appellees.'' In support of this assignment, they place themselves upon the doctrine of ''res ipsa loquitur,'' saying, ''It is a matter of common knowledge that death does not ordinarily result from a tonsillectomy. Yet, Evelyn Sanders died shortly after a tonsillectomy was performed on her. Why she did so, neither we nor appellants know. We submit that her parents are entitled to an explanation. And the court erred in excusing appellants from making such explanation.''

In a recent treatise on the doctrine of res ipsa loquitur by Mark Shain, at page 1, borrowing from a noted English case, Scott v. London and St. Catherine Docks Co., 3 H&C 596, 13 W. R. 410, 11 Jur. (N. S.) 204, 34 L. J. Exch. 220, 13 L. T. 148, 159 Eng. Rep. 665, the doctrine is defined to be ''When a thing which causes injury without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as, in the ordinary course of things, does not occur if the one having such control uses proper care, then the injury arose from the defendants' want of care.'' In Waddle v. Sutherland, 156 Miss. 540, 126 So. 201, 203, we said: ''Res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence; not that they compel such an inference, but that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking. 'But it is evidence to be weighed, not necessarily to be accepted as sufficient;

that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense.' '' However, in the cited case, the facts and details of the treatment were revealed in the evidence sufficiently to establish that the required skill and care was not brought to bear upon the condition under treatment. Third degree burns developed from double application of X-rays, in the process of professional treatment of eczema, resulting in amputation of both legs. These things spoke for themselves. The court refused instructions to appellant based on the doctrine of res ipsa loquitur, and the case was reversed for that reason.

Appellant relies here mainly upon a California case, Ybarra v. Spangard et al., 25 Cal. (2d) 486, 154 P. (2d) 687, 162 A L. R. 1258. In that case, during the performance of an appendectomy, and while the patient was under the influence of an anesthetic, he received serious injuries to his arm. In an earlier decision in the same case, the same court had held that the doctrine of res ipsa loquitur did not apply. Ybarra v. Spangard et al., Cal. App., 146 P. (2d) 982. But on the rehearing, it held, in the decision quoted by appellant, that it did apply to the facts of the case, because the injuries to the patient's arm were not the subject of the treatment or within the area covered by the operation. Why would the patient's arm receive injury during progress of an appendectomy?

The same California Court in Engelking v. Carlson, 13 Cal. (2d) 216, 88 P. 695, 697, said, in effect, that the law has never held a physician or surgeon liable for every untoward result which may occur in medical practice. It requires only that he shall have the degree of learning and skill ordinarily possessed by physicians of good standing practicing in the same locality, and that he shall use ordinary care in applying that learning and

skill to the treatment of his patient. In the case at bar, it is to be noted that there is no proof in the record, whatever, to show lack of such degree of learning and skill in appellants, or that the stated degree of care was not used in this case. It was held by the court in Ewing v Goode, C.C., 78 F. 442, 443, that a physician is not a warrantor of cures, and, if a failure to cure were held to be evidence, however slight, of negligence on the part of the physician or surgeon causing the bad result, few would be courageous enough to practice the healing art. Again citing the California court, they announced the doctrine that whether a physician has used ordinary care in applying the degree of learning and skill ordinarily possessed by physicians of good standing practicing in the same locality is generally a question for experts, and can be established only by their testimony unless the matter in issue is within the common knowledge of laymen. Trindle v. Wheeler, 23 Cal. (2d) 330, 143 P. (2d) 932. Where the act of omission or commission on the part of a surgeon has been plainly negligent, the rule of res ipsa loquitur applies, said the Supreme Court of Iowa in Whetstine v. Moravec, 228 Iowa 352, 291 N. W. 425. In that case, an exodontist, in pulling a tooth, permitted the root of it to pass into the plaintiff's right lung. A layman would know that such result was plainly due to negligence. In Mitchell v. Saunders et al., 219 N. C. 178, 13 S. E. (2d) 242, the doctrine of res ipsa loquitur was held to apply in patient's action against physicians for injuries allegedly sustained through negligence of such physicians in leaving a gauze sponge in patient's body after an operation. The sponge itself spoke of negligence.

In the case of Loudon v. Scott, 58 Mont. 645, 194. P. 488, 492, 12 A. L. R. 1487, a case involving res ipsa loquitur, the Court said: ''The gravamen of this case is negligence, and negligence cannot be inferred from the fact alone that the patient died. Haire v. Reese, 7 Phila., Pa., 138; Bonnet v. Foot, 47 Colo. 282, 107 P. 252, 28 L. R. A., N. S., 136. The maxim, 'Res ipsa loquitur', has

no application to a case of this character. Ewing v. Goode, C.C., 78 F. 442.'' The Court there also further held that the very nature of the case required, for proof, the testimony of one qualified to give an expert opinion,— and in the absence of such testimony, the case failed. In the case at bar, it is to be remembered that no expert witness testified, for appellants as plaintiffs below, only the appellant, mother.

We have also two interesting cases in Mississippi involving the doctrine, ''res ipsa loquitur.'' The first we cite is Saucier v. Ross, 112 Miss. 306, 73 So. 49, 50. The trial court excluded plaintiff's evidence and directed a judgment for defendant doctor. This Court said: ''This was error. Unexplained, the leaving of a four-inch rubber tube in a patient's body by a physician is negligence, and it occurs to us that it would be very difficult for a physician to explain how he could leave a rubber tube in a patient's body, until the wound healed over same, and not be guilty of negligence in the treatment of his patient.'' Here, again, a layman would know that such a thing would be bound to be negligence, unexplained. The four-inch rubber tube, left in the patient's body, itself spoke of negligence.

The other case is Prewett v. Philpot et al., 142 Miss. 704, 107 So. 880. In an operation for appendicitis, one of the windows to the operating room was left open, and, although screened, a large number of bugs came through the meshes, being of a type of hard shelled, although small, beetles. Said the Court: ''The appellant was discharged from the hospital by Dr. Philpot about ten days after the operation, and a few days thereafter his wound became inflamed and pus began to form therein to such an extent as to necessitate his being again carried to the hospital, where he remained for some days, during which time Dr. Philpot reopened his wound and drained and treated it. Before the appellant returned to the hospital two bugs of the kind that were in the room while he was being operated on were gotten out of his wound by his mother, and

the jury would have been warranted in believing from the evidence that the bugs got into the wound while the operation was being performed, and caused it to become inflamed and the pus to accumulate therein. . . . Some reasonable explanation for opening the windows must be given before the appellees can be held not to have been negligent in permitting the bugs to get into and remain in the appellant's wound." The presence of the bugs was the thing itself that spoke.

In J. C. Penney Company v. Evans, 172 Miss. 900, 160 So. 779, this Court laid down the rule that the doctrine of res ipsa loquitur should be cautiously applied. An analysis of the cases, supra, and they are in harmony with the weight of authority, leads to the conclusion, we think, that the test, generally, is not that the result of the operation was unusual and unexpected, or even fatal, alone and by itself, because, without an abnormal and rare end to operation, there would not exist an occasion for an action in damages from it. The real question, generally, is whether or not in the process of the operation any extraordinary incident or unusual event, outside of the routine of the action of its performance, occurred, and beyond the regular scope of its customary professional activity in such operations, which, if unexplained, would themselves reasonably speak to the average man as the negligent cause or causes of the untoward consequence. If there were such extraneous interventions, then the doctrine of res ipsa loquitur would be applicable to call upon the defendant to explain the matter, by evidence of exculpation, if he could. The jury would then decide the issue of fact in the case.

We are not to be understood as holding that the foregoing is the exclusive test, and that there can be no other conditions wherein the doctrine of res ipsa loquitur might be applicable in malpractice cases under appropriate facts and circumstances. But in the case at bar, we are of the opinion that the maxim has no proper application, and that the court below was correct in sustaining the motions

to exclude the testimony offered by appellants, and entering a directed verdict for appellees. The judgment of the trial court is, therefore, affirmed.

Affirmed.

**Sydney Smith, C. J.,** did not participate in this decision.

**Alexander, J.,** delivered a concurring opinion.

I concur in the result and the reasons assigned therefor. I find it not inappropriate to emphasize that although death is an unusual result of a tonsillectomy, negligence is not supplied under the doctrine "res ipsa loquitur," because there was no showing as to the cause of the death. This doctrine never supplies the proximate cause; it is set in operation by a showing thereof. Here negligence, if it existed, could have arisen in the surgical procedures, a failure to test the patient for susceptibility to untoward reactions, an improper administration of anesthetics or careless post-operative care. Of course, it could also have been due to unforeseen but normal causes.

The cited doctrine does not search the entire circumstances to select a producing cause, nor does it create a presumption that a particular omission was the cause and erect thereon a second presumption that such act or omission resulting in injury bespeaks negligence. It could well be, which is not here intimated, that due care throughout the entire processes of treatment might have prevented death. But death alone is insufficient to establish both its cause and an inference of negligence therefrom. Loudon v. Scott, 58 Mont. 645, 194 P. 488, 12 A.L.R. 1487; Lippard v. Johnson, 215 N.C. 384, 1 S.E. (2d) 889; Prosser on Torts, Sec. 43, p. 296; Chapin, Torts, 1st Ed., Sec. 111, p. 538.

**Roberds, J.,** delivered a concurring opinion.

I do not dissent from the conclusion reached herein for the sole reason that this record contains no proof that

death from an operation removing tonsils is a rare and unusual result, and because I cannot say officially that knowledge of such result, if it is a fact, is so widespread and commonly known that we can take judicial knowledge of it. I regret that this is the case, because apparently the death of this child was the result of the grossest kind of negligence or incompetence.