GENERAL BENEVOLENT ASS'N., INC. *v.* FOWLER.

Division B. Jan. 22, 1951.

No. 37804 (50 So. (2d) 137)

**C. D. Gibbes, Jr.**, and **Welch, Cooper & Welch**, for appellant.

**Quitman Ross**, and **Collins & Collins**, for appellee.

**Ethridge, C.**

This is an action by a hospital patient for damages for the alleged negligence of the hospital nurses in breaking and leaving a piece of needle in the patient's arm, with a resulting infection. The suit was originated by Mrs. Hettie Fowler, appellee, in the Circuit Court of the Second Judicial District of Jones County, Mississippi, against appellant, General Benevolent Association, Inc., the owner and operator of the Laurel General Hospital, which is a private institution operated for profit. Appellee recovered a judgment in the amount of $5,000.00.

Appellee was an employee of a textile mill in Laurel. Shortly before May 4, 1948, she became ill with gastritis, and Dr. McRae, who was the physician employed by the mill to treat its employees, examined appellee, and on May 4 sent her to the Laurel General Hospital, which is owned and operated by appellant. Among other treatments which the doctor prescribed for her were several injections of glucose into her body every twenty-four hours The glucose infusions were given to appellee by nurses employed by appellant in its hospital from May 4 to May 8, 1948. Appellee's case tended to show that when she entered the hospital her left arm was in normal condition, but when she was discharged from appellant's hospital on May 9th the arm was very sore, discolored, and swollen, and was giving her great pain. The glucose was injected into her arm in the hospital at a slow rate requiring from one to two hours. It is obtained by the hospital in a bottle ready to be administered to the patient.

The nurses, when giving this substance to a patient, use a rubber tube, at one end of which is a hollow metal tube, which is inserted through the cork in the mouth of the jug containing the glucose, and then this is inverted and placed on a stand above the patient. The other end of the rubber tube has a place for a hollow hypodermic needle. The patient's arm is immobilized by placing it on a board and strapping it down with adhesive tape, after which the needle is injected into the arm in the cubital area on the inside of the arm near the elbow. After the injection of the needle, adhesive tape is placed at this point to hold the needle in place. The glucose is inserted into the patient's veins by a drip method with gravity. After the prescribed amount of glucose is administered, the nurse removes the needle, cleans it out with a syringe, and the needle is then sent to a central place, after which it is sterilized for future use.

After appellee had left the hospital on May 9th, the place on her left arm where these injections had been made continued to be sore, swollen, with a strong, unpleasant odor and great pain. Four days after leaving the hospital, Dr. McRae treated appellee's arm for the infection, and in succession Doctors Gatlin and Fatherree treated her. At the time Fatherree checked appellee's arm, she was in the South Mississippi Charity Hospital as a paying patient. He testified that he examined her arm on or about June 9, that she was suffering from an infection consisting of a "superficial ulcer" in that arm, and that when he prepared to change the dressing on it he observed an ulcerated part in the cubital area opposite the elbow about the size of a dime. He stated that "on top of the crust of that area was a metallic object" which "was visible when the dressing was removed", and that he "took a pair of little tweezers and lifted it off" the crust. It was "on the surface". Appellee testified that Fatherree "went down in" her arm and pulled out the piece of needle, that he "pulled it out of my arm". He then gave it to appellee, and the broken piece of hollow

needle about one half inch in length, was introduced as an exhibit on the trial.

There was also introduced as an exhibit a larger size of infusion needle, of gauge 20. The doctors and nurses, witnesses for appellant, testified that a size 20 needle only was used for infusions of glucose into adults, but that a size 25 gauge needle, which apparently was the size of the one taken from appellee's arm, was used only (a) for infusions of narcotics and other highly liquid substances, and (b) by a doctor who was personally administering glucose to a child. The hospital did have size 25 needles, used for the above stated purposes. Fatherree removed the needle from appellee's arm on June 9th, and thereafter Mrs. Fowler was discharged from the Charity Hospital. Dr. Swartzfager then treated her arm. It did not heal, and the skin would break and bleed with small ulcers at the point of the injections. Swartzfager referred appellee to a Mobile specialist who treated her from November 18 to December 22, 1948, and operated on the arm.

The testimony of appellee's witnesses, not disputed, is that appellee had never had, prior to the infusions in appellant's hospital, any trouble with her arm, nor any injections by needles in her arm, and that after being discharged from the hospital appellee had no such injections. The only persons who had made injections by needle into her arm were the employees of appellant, during the time she was a patient in appellant's hospital.

Appellee's declaration charged appellant with negligence in breaking off the needle in her arm, and negligence in a failure to immediately remove it therefrom, or to inform her of it. The only instruction obtained by appellee on the issue of negligence limited the same to the latter charge, but instructions granted appellant also included the former charge. On the trial appellant introduced its hospital records and six nurses who had made them and had administered the glucose infusions to appellee. All of them testified that during none of the infusions

had they observed a broken needle. They were not able to identify who had terminated one particular infusion. They also testified that they had never in their experience seen an infusion needle broken.

There was adequate evidence on the issues involved to go to the jury and to sustain its verdict of liability. Uncontradicted testimony showed that before appellee went to the hospital, her arm was normal, and that before she left it, it had begun to discolor and swell in size in the cubital area. She had never had any trouble with it before. During the peroid she was in the hospital, she had had these glucose infusions administered by the servants of appellant in her left arm at and around the place where the ulcer and infection occurred. She had not had any needles inserted in her arm before or after her stay in appellant's hospital. After it, the infection in the arm gradually became more extensive and painful until the needle was removed by Dr. Fatherree, and continued for some time afterwards. There was no dispute that the piece of needle was removed from appellee's arm, and the jury could well have believed that in the month's period after leaving the hospital the needle had moved to the surface of the ulcer, and finally become visible.

██ ██ These factors and other substantiating evidence were enough to warrant a finding that the needle was inserted and broken off in appellee's arm, by an act of appellant's servants in the hospital, and that either it was negligently broken off in her arm by appellant's servants, or that appellant was negligent in failing to ascertain that the needle had broken there, and in failing to remove it or advise appellee thereof, or both. They also warranted an inference that one of the nurses had used the wrong size of needle.

██ ██ Appellant owed to appellee a duty to use reasonable care and skill in giving the infusions to her. 41 C. J. S., Hospitals, Sec. 8, pages 349-351, 342-345; Meridian Sanatorium v. Scruggs, 1919, 121 Miss. 330, 83 So. 532; Maxie v. Laurel General Hospital, 1922, 130

Miss. 246, 93 So. 817; 41 Am. Jur., Physicians and Surgeons, Sec. 97 (leaving foreign substance in wound).

Appellant complains that there was no direct testimony by an eyewitness of the breaking of the needle in appellee's arm, but it is not often that negligence of this type can be proved by such direct evidence. Circumstantial evidence which offers a reasonable probability of correctness is adequate to support the verdict. As was held in Palmer v. Clarksdale Hospital, 1949, 206 Miss. 680, 40 So. (2d) 582 "the case here presented is based upon circumstantial evidence from which a reasonable inference . . . of negligence may be drawn . . ." Whether these inferences should be drawn and appellee's testimony accepted, or whether the evidence of appellant, including that of the disparity in the size of the needles, and of the doctors and nurses (which also was circumstantial) should be believed, was a question for the jury to decide.

These principles are in accord with earlier decisions of this Court on somewhat similar problems and with established attitudes of other courts.

Richardson v. Dumas, 1914, 106 Miss. 664, 64 So. 459, 460, appears to be the first Mississippi case dealing with this general problem. The patient had been taken to the private sanitarium of appellee for treatment at a time when he was delirious. Appellee had agreed to furnish him with a trained nurse each day and night, but at about midnight he was found on the pavement in the backyard of the sanitarium without clothing and severely injured. The patient died the next day from these injuries, and in an action for damages by his next of kin, the trial court sustained a motion to exclude the plaintiff's evidence and directed a verdict for defendant. The Court held that the owner of a private hospital operated for profit is liable in damages "for the negligence of his employees. . . . This rule rests upon the general doctrine that a master is responsible for the torts of his servant in the scope of his employment. The court erred in not sub-

mitting this case to the jury. Matthew Richardson, the patient, was under the control and care of appellee and his employe, the nurse. Under the contract it was the duty of appellee to give the patient all the attention required. The facts presented by the evidence, the very nature of the occurrence, shows a prima facie case of negligence in failing to exercise due care in nursing and looking after the patient." There was no direct evidence as to how the patient had fallen from the window, or the exact circumstances of his fall, but the court thought that the physical facts were sufficient to go to a jury on the issue of negligence.

In Saucier v. Ross, 1916, 112 Miss. 306, 73 So. 49, 50, plaintiff sued Dr. Ross for negligence in an operation upon him for an abscess, charging that during the operation the doctor had negligently left in the incision a rubber tube and some gauze. The Court reversed a directed verdict for defendant and said that "unexplained, the leaving of a four-inch rubber tube in a patient's body by a physician is negligence, and it occurs to us that it would be very difficult for a physician to explain how he could leave a rubber tube in a patient's body, until the wound healed over same, and not be guilty of negligence in the treatment of his patient." The Court thought that it was a case for the jury.

In Meridian Sanatorium v. Scruggs, supra, plaintiff sued a hospital for the negligent act of a nurse in placing against her right foot while she was unconscious from an anaesthetic a hot-water bottle, which severely burned and scalded her, and crippled her foot. The defendant contended that the injury was caused from the plaintiff's shoes and from a prior infection. Affirming a jury verdict for the plaintiff, it was said that the evidence "is ample to support a verdict . . . A patient is generally admitted to a hospital conducted for private gain under either an express or implied obligation that he receive such reasonable care and attention for his safety as his

mental and physical condition, if known, may require.''
[121 Miss. 330, 73 So. 460.]

Maxie v. Laurel General Hospital, supra, involved a
suit for damages against a hospital for alleged negligence
in causing the death of plaintiff's daughter, who was eight
years of age. She had an attack of appendicitis and was
carried to the hospital. After the operation, when there
was no attendant in the ward where the child was staying,
she fell off the bed on which she was lying and soon there-
after died. It was held that the trial court erred in
directing a verdict for defendant. The child was left in
the ward without an attendant or any means of calling
assistance, and while so situated for some reason fell
from her bed. The Court said that ''the business of such a
hospital carries with it an implied obligation to give the
patients therein reasonable care and attention''. Whether
there was negligence was a question for the jury.

In Prewett v. Philpot, 1926, 142 Miss. 704, 107 So. 880,
the plaintiff sued a doctor and the Houston hospital for
injuries resulting from a surgical operation performed
upon him in the hospital. In performing the appen-
dectomy the doctor had raised windows in the operating
room to obtain relief from the June heat, and a large
number of small, hard-shell beetles came through the
screen and were in the operating room. After plaintiff's
discharge from the hospital, his wound became inflamed
and had to be reopened and treated. Before plaintiff
returned to the hospital, his mother had removed two
bugs of the kind which were in the operating room out
of his wound. The Court said that the ''jury would have
been warranted in believing from the evidence that the
bugs got into the wound while the operation was being
performed, and caused it to become inflamed and the pus
to accumulate therein.'' In holding that the trial court
erred in directing a verdict for the defendants, the Court
pointed out that the above factors might authorize a
reasonable inference that the bug got in the plaintiff's
incision while the operation was being performed and

caused the infection. As in the present case with reference to the needle, no one saw the bugs enter the incision, but that did not preclude an inference from the circumstances that that was what had occurred.

Waddle v. Sutherland, 1930, 156 Miss. 540, 126 So. 201, involved a situation where plaintiff sued for damages for loss of both legs alleged to have been caused by a doctor's negligence in treating plaintiff with an X-ray machine, with the assistance of a nurse. The jury returned a verdict for defendant which was reversed on appeal, and the case remanded because of an error in an instruction. This instruction told the jury that in deciding whether the treatment of plaintiff with the X-ray was done with ordinary care and skill, the jury could consider the testimony only of those who themselves possessed the skill to administer such treatments. The trial court thus erroneously excluded from the consideration of the jury the testimony of both the plaintiff and his wife about the burns. The case did not depend alone upon expert testimony. In the present case also, the plaintiff and her family testified concerning physical facts subject to intelligent lay observation which the jury was entitled to accept if it wanted to.

In Sanders v. Smith there was no evidence of negligence to go to the jury, 1946, 200 Miss. 551, 27 So. (2d) 889. The most recent case in this state on the availability of circumstantial evidence to prove negligence by a hospital employee is Palmer v. Clarksdale Hospital, 1949, 206 Miss. 680, 40 So. (2d) 582, 584. Plaintiff had a major operation in a hospital, during which her feet were strapped to the operating table in such a manner as to cut off the circulation of blood, and to result in a gangrenous condition severely and permanently injuring her. Defendant contended that the injury was caused by the negligence of plaintiff's privately employed nurse in placing too hot a water bottle to her feet. The Court said that the trial judge erred in directing a verdict for defendant, and that it was a case for the jury. It cau-

tioned against transforming a "simple, understandable rule of circumstantial evidence, with a sound background of common sense and human experience", into "a rigid legal formula, which arbitrarily precludes its application * * *." There was sufficient "circumstantial evidence from which a reasonable inference or presumption of negligence may be drawn * * *." And whether this inference should be drawn was for the jury.

The foregoing decisions clearly support the action of the learned trial judge in submitting this case to the jury in the light of the circumstantial and direct evidence presented by both sides.

 Appellant urges that the verdict of $5,000.00 is excessive and demonstrates that the jury was swayed by passion and prejudice. Without going into the details of the damages, we think that there was adequate evidence to support a finding of actual damages in that amount. Plaintiff incurred about $446.00 worth of doctor, hospital and medical bills. She was laid off from work as a result of the injuries for most of the time from June, 1948, to February, 1949, nine months. Her average monthly earnings were about $153.00, excluding overtime wages which she testified that she usually received. Her testimony is uncontradicted that she had extreme pain and suffering from her arm, and that for several weeks it was strapped to a board in a plaster cast. She had an operation upon it, involving skin grafting. She testified that her arm still gave her considerable pain, was much weaker than it had been before, and that she could not operate the textile machine with her left arm as usual because of this weakness, but instead had to substitute her right hand and arm. The infection and operation have left visible and apparently permanent scars on her arm. She testified that at the time of the trial she still could not straighten it out, that it still remained somewhat crooked. This and other testimony in the record could well have been accepted by the jury as a basis of its verdict. This Court has long since held that

it will not substitute its judgment for that of the jury in the amount of damages, unless the verdict is palpably excessive. Chapman v. Powers, 1928, 150 Miss. 687, 116 So. 609; Gatlin v. Allen, 1948, 203 Miss. 135, 32 So. (2d) 304; J. C. Penney & Co. v. Evans, 1935, 172 Miss. 900, 160 So. 779.

 The only instruction obtained by plaintiff on the facts omitted any liability based upon a negligent breaking of the needle in her arm, and directed liability toward whether defendant's nurses knew or by the exercise of reasonable care could have known that the needle was broken in her arm and negligently failed to inform her of that fact. Appellant cannot complain because the instruction could have been written more favorably for appellee by including a charge of negligent breaking of the needle. Moreover, even if the instruction was erroneous because of that omission, it was cured by other instructions obtained by appellant on that point.

 Appellant also suggests that it was error to exclude the testimony of Dr. McRae as to his conclusion from the development of an ulcer on an incision made in an operation on appellee in 1947. The Court held it inadmissible, but permitted appellant to make a showing of what the doctor would testify. In reply to a question of whether the development of the ulcer in the 1947 operation on appellee would "indicate anything", the doctor said: "Yes, it would indicate somewhat, not definitely, but it would make you think there might be some tendency to such as that." It was not error to exclude this testimony, because McRae's answer was too indefinite and qualified to be of any probative value on any issue. It was immaterial.

The judgment of the court below is therefore affirmed.

Affirmed.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and for the reasons therein indicated, the case is affirmed.