REYNOLDS *v.* FORBES.

No. 41311 December 14, 1959 116 So. 2d 539

*Dudley W. Conner, Joe R. King,* Hattiesburg, for appellant.

*M. M. Roberts,* Hattiesburg; *Mounger & Duff, Maurice Dantin, Hall & Callender,* Columbia, for appellee.

LEE, J.

Mrs. Juanita Reynolds, by her original and amended declarations, in the Circuit Court of Forrest County, sued Jack Forbes, an individual and a resident of Marion County, Jack Forbes doing business as Jack Forbes Lumber Company, a resident of Marion County, T. Heck Webb, doing business as Mid-State Paving Company, a resident of Lauderdale County, and Myers-Webb Construction Company, a domestic corporation, domiciled in Lauderdale County, to recover damages for personal injuries sustained by her in an intersectional collision of her Ford car with a Lincoln automobile, driven by Forbes.

Forbes filed an application for a change of venue to Marion County, where he maintained his household and residence. The other two defendants filed separate demurrers.

Francis T. Zachary, the regular judge of the court, rescued himself. The parties agreed for Judge Thomas D. Ott, the chancellor of that district, to preside in the cause. The matter was heard by him on the demurrers and the separate application of Forbes for a change of venue. The demurrers were sustained and the cause was dismissed as to the demurrants when the plaintiff did not ask for the privilege of amending, and the application for a change of venue was sustained, and the venue of the cause was changed to Marion County, the household and residence of Jack Forbes. The announcement of this decision was made about 4:30 P. M. and the order therefor was signed by Judge Ott about 6:30 P. M. on September 4, 1958, and such order was lodged with the clerk at 9:28 A. M. on September 5, 1958.

Thereafter at 10:10 A. M. on September 5, 1958, the plaintiff filed with Judge Zachary a motion for a nonsuit, the motion was granted, and an order to that effect was entered. On the next day, Jack Forbes made a motion to set aside the order, which allowed the nonsuit, and Judge Zachary made a finding of fact as to what had transpired, as stated above, and held that the Circuit Court of Forrest County did not have jurisdiction of the cause when the motion for a nonsuit was presented and when he signed the order thereon. He therefore set aside his order of nonsuit.

The original court file, with all papers and certified copies of the orders and judgments, under the certificate of the clerk, were forwarded to the Circuit Court of Marion County.

Forbes, on September 6, 1958, filed an answer in the Circuit Court of Marion County, denying all of the material allegations of the original and amended declarations, and made his answer also a counterclaim in which he charged that the collision of the automobiles proximately resulted from the negligence of the plaintiff; and he sought to recover from Mrs. Reynolds for the personal injuries and property damage which he sustained, allegedly as a result thereof.

The plaintiff and cross-defendant, by her answer, denied the material allegations of the counterclaim.

The jury found a verdict for Forbes, on his counterclaim against Mrs. Reynolds, and assessed his damages in the sum of $15,000. From the judgment entered thereon, Mrs. Reynolds appealed.

The appellant contends that she had a right to take a voluntary nonsuit; that the court erred in setting aside the order to that effect; and that all subsequent proceedings were void.

Section 1538, Code of 1942 Rec., provides: "Every plaintiff desiring to suffer a nonsuit on trial shall be

barred therefrom unless he do so before the jury retire to consider of its verdict.''

The appellant has cited several of our cases, dealing with the right of nonsuit, but a reading thereof shows that, in each instance, the court still had jurisdiction when the nonsuit was granted. Consequently those cases are inapplicable. The rule in Welch v. Kroger Grocery Co., 180 Miss. 89, 177 So. 41, to the effect that the plaintiff may take a nonsuit if nothing further than the court's oral announcement of its decision has been made, has no application here because the court, in the case here, had not only made its announcement that the demurrers and the motion to change the venue were sustained, but the judgment therefor had already been entered on the minutes of the court when the motion for the allowance of a voluntary nonsuit was made. As stated, Judge Zachary had recused himself. The appellant did not even present her motion for a nonsuit to Judge Ott. It was presented to Judge Zachary, who had not participated in the hearing at all. An, when Judge Zachary learned that Judge Ott had already decided the case and that the order for the change of venue had been entered on the minutes, he promptly set aside his former order.

92 C. J. S., Venue, Section 202, pages 972-3, in part, seems to be directly in point: "As a general rule a change of venue divests the court making the order of further jurisdiction in the case, other than to transfer the cause to the proper court, and all steps taken in the case after the change of venue has been perfected are ineffective for any purpose. Thereafter it has no jurisdiction of the subject matter of the cause, the parties thereto, or any matter incident thereto. It has no power, jurisdiction, or authority to permit the filing of an answer in the case or to hear a defense therein, and it cannot make any further order or take any

further steps in the case, vacate a prior order entered in the case, *enter an order of dismissal* or of default, render a judgment in the case, whether by default or on the merits, enter a judgment for costs, or tax the costs of the change. * * *.'' (Emphasis supplied).

See also 56 Am. Jur., Venue, Section 78, page 79, in part, as follows: ''A change of venue not only absolutely divests the court from which the cause was removed of jurisdiction, but it also clothes the court to which removal is had with the same jurisdiction that reposed prior to the change in the court or original venue. Thereafter, the cause appertains and belongs exclusively to the court to which the order is directed. *That court, by virtue of the change of venue, is invested with complete control and authority over the subject matter in dispute, and its jurisdiction and power cannot be ousted or destroyed by the improper interference of any other tribunal.*'' (Emphasis supplied).

From which its follows that the appellant's motion, in the Circuit Court of Forrest County, to take a nonsuit, came too late, and Judge Zachary's allowance thereof was void.

 █ The appellant also contends that the verdict of the jury was contrary to and against the overwhelming weight of the evidence, is grossly excessive, and evinces passion, bias and prejudice; and, for those reasons, her motion for a new trial should have been granted.

It is clear that, about 4:00 o'clock in the afternoon of May 31, 1958, Jack Forbes, accompanied by Charles Rogers and Victor Yawn, was proceeding in a westerly direction, driving his Lincoln automobile along the new section of Highway 13. Mrs. Juanita Reynolds, accompanied by her daughter Sandra, was proceeding in a southerly direction driving her Ford automobile along the Lower Lumberton Road. The vehicles collided in

the intersection of these two roads. The contact was between the left front of the Ford and the right front of the Lincoln. All of the occupants of the two cars were substantially injured. The appellant, by the allegations of her declaration, placed the full blame for the collision on Forbes. On the other hand, Forbes, in his answer and counterclaim, placed the full blame on Mrs. Reynolds.

Only three eyewitness testified: Mrs. Reynolds, for herself; and Jack Forbes and Victor Yawn for the defendant and counterclaimant.

Mrs. Reynolds testified that she was driving about 30 miles an hour; that she stopped her car as she approached the intersection and looked both ways; that, as she started across, at a speed of 5 to 10 miles an hour, she "was hit by a bolt;" that she did not see the car, but was told later that it was the Forbes car; and that there was an embankment at her left but she said, if it blocked her view, she did not know it. Actually, the intersection was at an oblique angle. She admitted that she did not see the Forbes car, and that she did not know whether the Ford hit the Lincoln or the Lincoln hit the Ford.

Forbes testified that he was traveling west on new Highway 13 at a speed of 40 to 45 miles an hour; that after he got into the intersection, he glimpsed the Ford, headed south, traveling at a high rate of speed on the Lower Lumberton Road, and that it hit his car on the right front side. Yawn hollered out, "Watch that car." His car was in the west half of the intersection and was about to get out of it when the Ford struck. The Ford was going about 70 miles an hour. The Lincoln was knocked southwest about 90 feet, and the Ford went about 190 or 200 feet in the same direction in which it was headed. He said that he went to the car and asked Mrs. Reynolds "Lady, what in the world did

you mean coming out of that road like that?'', and that she replied, ''I never did see you.''

Victor Yawn corroborated Forbes' version, saying that the Lincoln was traveling at 40 to 45 miles an hour; that it had crossed three-fourths of the intersection when it was hit; and that the Ford was making between 70 and 80 miles an hour.

Several witnesses testified that they smelled the odor of alcohol on Forbes breath; but he denied that he had been drinking, and his version was borne out by Yawn. The doctor testified that, when he made an examination of Forbes sometime later, he did not smell any odor of alcohol.

The issue in this case was typically one for a jury, and there is no substantial basis upon which it can be said that the verdict was against the great or overwhelming weight of the evidence.

■■ The appellee's medical bills were in excess of $400. There was evidence that the value of the Lincoln, before the collision, was $4,100. It was salvaged for only $458, entailing a loss of $3,642. Dr. Hal Williams testified that appellee had a fracture of the transverse process of the first, second, third and fourth lumbar vertebras on the right side, and that such injuries are more painful than if the fractures had been larger. In his opinion, Forbes will have pain up to 12 months after the injury; and the more active he is, the more pain he will endure. Forbes was confined to a hospital for a week, had to lie in a special bed for 45 days, and had to wear a brace for two months. At the time of the trial, he testified that he was having lots of pain, that his back bothered him all of the time, and that at times he cannot sleep at night.

This Court is not in position to say, in the first instance, that the verdict is excessive; and it certainly cannot say that the amount is so grossly excessive as

to evince passion, prejudice and bias on the part of the jury. J. C. Penney Co. v. Evans, 172 Miss. 900, 160 So. 779; General Benevolent Assn. v. Fowler, 210 Miss. 578, 50 So. 2d 137; Reed v. Eubanks, 232 Miss. 27, 98 So. 2d 132; and cases there cited.

The cause must, therefore, be, and it is, affirmed.

Affirmed.

*McGehee, C. J.,* and *Holmes, Ethridge* and *Gillespie, JJ.,* concur.