# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI

### NO. 1998-CA-00905-COA

**BRYANT AUSTIN AND SHIRLEY AUSTIN**                                    **APPELLANTS**

**v.**

**BAPTIST MEMORIAL HOSPITAL - NORTH MISSISSIPPI**                    **APPELLEE**

### CONSOLIDATED WITH

### NO. 97-CA-00186

**BRYANT AUSTIN AND SHIRLEY AUSTIN**                                    **APPELLANTS**

**v.**

**DR. WAYNE T. LAMAR, BAPTIST MEMORIAL HOSPITAL - NORTH MISSISSIPPI, JOHN DOE AND ABC CORPORATION**                    **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/13/1998 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | ROY O. PARKER, JR. |
| | ROY O. PARKER |
| ATTORNEYS FOR APPELLEE: | JOHN H. DUNBAR |
| | C. JACKSON WILLIAMS |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| TRIAL COURT DISPOSITION | SUMMARY JUDGMENT GRANTED IN FAVOR OF THE DEFENDANTS |
| DISPOSITION: | AFFIRMED - 04/18/2000 |
| MOTION FOR REHEARING FILED: | 5/4/2000; denied 7/25/2000 |
| CERTIORARI FILED: | 8/10/2000; denied 10/12/2000 |
| MANDATE ISSUED: | 11/2/2000 |

BEFORE McMILLIN, C.J., BRIDGES, PAYNE, AND THOMAS, JJ.

THOMAS, J., FOR THE COURT:

¶1. Bryant Austin alleged he sustained an injury to his upper right leg as a result of the negligence of Dr. Wayne T. Lamar, an orthopedic surgeon, and the staff of Baptist Memorial Hospital-North Mississippi. The Austins alleges that Dr. Lamar or an employee of BMH negligently injured his right leg above the knee when his leg was improperly placed in a leg holding device which was used to keep his knee stabilized

during the surgery to repair a torn medial meniscus in his right knee. The Austins filed a suit against Dr. Lamar and Baptist Memorial Hospital-North Mississippi on May 23, 1996. Dr. Lamar and BMH each filed a motion for summary judgment claiming that the Austins did not establish a prima facie case because they did not identify an expert witness to testify to establish negligence. Summary judgment was granted by the Lafayette County Circuit Court judge as to both Dr. Lamar and BMH. Feeling aggrieved, the Austins appeal to this Court asserting the following errors:

## ISSUES

**I. WHETHER THE DOCTRINE OF *RES IPSA LOQUITUR* APPLIES IN THIS CASE.**

**II. WHETHER THE INJURIES SUFFERED BY PLAINTIFF TO A PART OF THE BODY REMOTE FROM THE TREATMENT AREA IS NEGLIGENCE *PER SE*.**

**III. WHETHER EXPERT WITNESS TESTIMONY WAS NEEDED TO ESTABLISH A STANDARD OF CARE AND BREACH THEREOF IN THIS MEDICAL MALPRACTICE CASE WHEN THE INJURY OCCURRED IN A PART OF THE BODY REMOTE FROM THE TREATMENT AREA WHILE THE PLAINTIFF, BRYANT AUSTIN, WAS UNDER THE SUPERVISION AND CONTROL OF THE DEFENDANT MEDICAL CARE PROVIDERS.**

**IV. WHETHER SUMMARY JUDGMENT WAS INAPPROPRIATE AND PREMATURE.**

¶2. Finding no error, we affirm.

## FACTS

¶3. Bryant Austin injured his knee at work. He went to see Dr. Lamar who diagnosed him as having a meniscal tear of the knee. A meniscectomy, an arthroscopic procedure (which uses an endoscope that is inserted through a small incision), was scheduled to be performed on June 1, 1994 at Baptist Memorial Hospital-North Mississippi. The procedure requires the patient's leg to be placed in a leg holding device to keep the knee stabilized on the operating table. An inflatable tourniquet is also wrapped around the patient's thigh and is inflated if the surgeon determines that an open procedure, which requires a full incision, must be performed. The tourniquet is used to stop the flow of blood into the incision site so the surgeon can see to perform the procedure. Dr. Lamar testified that a tourniquet was not used on Austin. Dr. Lamar also testified that the anesthesiologist is responsible for recording whether a tourniquet was used and how long the tourniquet was used. In the case at bar, the anesthesiologist's notes do not indicate that the tourniquet was used.

¶4. The surgery was performed as scheduled on June 1, 1994, and Austin was discharged the same day. Austin testified that when he first woke up he remembered his leg hurting above the knee. Shirley Austin, Bryant's wife, testified that Bryant had pain above his knee and that there was a mark or indentation on his right leg above the knee that looked like some device had been placed on the leg. Austin testified that his leg continued to hurt and to swell until June 5, 1994, when he became extremely concerned regarding the swelling in his leg and he returned to the hospital. Dr. Jean Gispen was consulted when Austin returned to the hospital, and she diagnosed Austin's condition as rhabdomyolysis in the right leg (deterioration and atrophy of the muscle). Dr. Lamar testified that many things can cause rhabdomyolysis, such as excessive exercise, and including an injury to the muscle caused by excessive force applied to the muscle.

¶5. Austin also testified that after his surgery but before he was released, an unidentified man visited him in his room and stated, "I'm sorry what happened. I just hate it happened."

¶6. On May 22, 1996, Shirley and Bryant Austin filed a complaint against Dr. Wayne T. Lamar, Baptist Memorial Hospital-North Mississippi, John Doe and ABC Corporation. (John Doe and ABC Corporation are unknown to us at this time and are not relevant to this appeal.) Dr. Lamar and BMH each filed a motion for summary judgment. The circuit court granted the summary judgment in favor of Dr. Lamar and BMH and the Austins are appealing that decision. Inexplicably, although the Austins filed the original complaint against the defendants collectively, the cases came up for appeal separately but were ultimately consolidated for purposes of disposition.

## ANALYSIS

### I. WHETHER THE DOCTRINE OF *RES IPSA LOQUITUR* APPLIES IN THIS CASE.

### III. WHETHER EXPERT WITNESS TESTIMONY WAS NEEDED TO ESTABLISH A STANDARD OF CARE AND BREACH THEREOF IN THIS MEDICAL MALPRACTICE CASE WHEN THE INJURY OCCURRED IN A PART OF THE BODY REMOTE FROM THE TREATMENT AREA WHILE THE PLAINTIFF, BRYANT AUSTIN, WAS UNDER THE SUPERVISION AND CONTROL OF THE DEFENDANT MEDICAL CARE PROVIDERS.

### IV. WHETHER SUMMARY JUDGMENT WAS INAPPROPRIATE AND PREMATURE

¶7. These assignments are interrelated and will be addressed collectively.

¶8. *Brown v. Credit Center, Inc*., 444 So. 2d 358 (Miss. 1983), is the seminal case regarding the trial court's duty in reviewing motions for summary judgment. The motion should be granted only where there is no genuine issue of material fact; it is not to be taken as a substitute for a trial of disputed issues. The trial court must view all evidence presented in the light most favorable to the party against whom the motion has been made. *Id.* at 362. If any doubt exists as to whether there is a disputed fact issue, the nonmoving party gets the benefit thereof. In fact, the party against whom the motion has been filed should be given the benefit of every reasonable doubt. *Id.*

¶9. In the case at bar, the Austins maintain that the case was subject to the doctrine of *res ipsa loquitur*, which raises an inference of negligence which must be rebutted, creating a genuine issue of fact. Dr. Lamar and BMH argue that the Austin's claim must fail because they had no expert medical testimony.

¶10. *Res ipsa loquitur*, literally translated "the thing speaks for itself," is simply one form of circumstantial evidence a plaintiff may rely on in certain circumstances. *See Read v. Southern Pine Elec. Power Ass'n*, 515 So. 2d 916, 919-20 (Miss. 1987). The doctrine of *res ipsa loquitur* is a rule of evidence that allows negligence to be inferred in certain fact situations. *Waddle v. Sutherland*, 156 Miss. 540, 549-50, 126 So. 201, 203 (1930). In the case of *Waddle v. Sutherland*, 156 Miss. at 549-50, 126 So. at 203, the Supreme Court of Mississippi held that the doctrine of *res ipsa loquitur* is applicable to malpractice cases. However, *res ipsa loquitur* requires a finding that (1) the instrumentality causing the injury was under the control and management of the defendant and (2) the occurrence resulting in the injury does not happen in the ordinary course of events, where due care has been exercised. *Id.* Basically, where the thing is shown to be under the management of the defendant, or his agent, and where an accident in the ordinary course of events does not happen when business is properly conducted, the accident itself, if it happens, raises a

presumption of negligence in the absence of any explanation. *Sanders v. Smith*, 200 Miss. 551, 557, 27 So. 2d 889, 891 (1946). But the cause of the untoward results must be clearly connected with the defendant as by his act or under his control before negligence can be presumed. *Id.*

¶11. The Mississippi Supreme Court stated that the law does not hold a physician or surgeon liable for every untoward result which may occur, it requires only that the requisite degree of learning and skill ordinarily possessed by physicians of good standing be exerted. *Sanders v. Smith*, 200 Miss. at 558, 27 So. 2d at 891 (citing *Engelking v. Carlson*, 88 P.2d 695, 697 (Cal. 1939). "Again citing the California court, they announced the doctrine that whether a physician has used ordinary care in applying the degree of learning and skill ordinarily possessed by physicians of good standing practicing in the same locality is generally a question for experts, and can be established only by their testimony unless the matter in issue is within the common knowledge of laymen." *Id.* at 559, 27 So. 2d at 891-92 (citing *Trindle v. Wheeler*, 143 P.2d 932, 933 (Cal. 1943)).

¶12. In the *Sanders* case, a ten year old girl had a tonsillectomy operation and suddenly died. The mother was the only witness offered. There was no expert testimony. *Sanders*, 200 Miss. at 559, 27 So. 2d at 892. The court granted a motion for a directed verdict upon the ground that no evidence was shown as to the lack of skill and care exerted by the defendants. *Id.* The plaintiffs argued *res ipsa loquitur*, but the Mississippi Supreme Court upheld the decision on appeal stating that there was no proof to show that the required degree of care was not used. *Id.*

¶13. Generally, expert medical testimony is required unless a "layman can observe and understand negligence as a matter of common sense and practical experience." *Coleman v. Rice,* 706 So. 2d 696, 698 (Miss. 1997). Thus, where the act or omission on the part of the doctor was plainly negligent the rule of *res ipsa loquitur* applies, but the Mississippi Supreme Court has stated that the doctrine of *res ipsa loquitur* should be cautiously applied. *J.C. Penney Co. v. Evans*, 172 Miss. 900, 160 So. 779 (1935). In *Sanders*, the court went on to state that:

> [T]he test, generally, is not that the result of the operation was unusual or unexpected, or even fatal, alone and by itself, because, without an abnormal and rare end to operation, there would not exist an occasion for an action in damages from it. The real question, generally, is whether or not in the process of the operation any extraordinary incident or unusual event, outside of the routine of the action of its performance, occurred, and beyond the regular scope of its customary professional activity in such operations, which, if unexplained, would themselves reasonably speak to the average man as the negligent cause or causes of the untoward consequence. If there were such extraneous interventions, then the doctrine of *res ipsa loquitur* would be applicable to call upon the defendant to explain the matter, by evidence of exculpation, if he could. The jury would then decide the issue of fact in the case.

*Sanders*, 200 Miss. at 561, 27 So. 2d at 892-93.

¶14. In the case at bar, we are constrained to hold that the doctrine of *res ipsa loquitur* does not apply. The rhabdomyolysis is not clearly connected to any act, omission or instrument in control of the defendants. Dr. Lamar's testimony indicates that the injury could have come about by various causes not in Dr. Lamar or BMH's control, and the plaintiff does not refute this fact. Furthermore, the Austins did not show that Dr. Lamar or the hospital staff deviated from the prerequisite standard of care. These issues are without merit.

## II. WHETHER THE INJURIES SUFFERED BY PLAINTIFF TO A PART OF THE BODY REMOTE FROM THE TREATMENT AREA IS NEGLIGENCE *PER SE*.

¶15. In an argument covering less than two pages and without citation to any authority or any medical expert testimony the Austins maintain that since Mr. Austin was under anesthesia and in the exclusive care of Dr. Lamar, any injury occurring to the leg outside of the operative site should be deemed negligence per se. The Austins argue that the duty to prevent injury to Mr. Austin while he was unconscious was absolute and any injury to an area remote from the operative site makes the doctor strictly liable. The Austins maintain that the leg-holding device, the tourniquet and Mr. Austin were exclusively under the control of Dr. Lamar; thus, any injury, especially an injury outside of the operative site, is Dr. Lamar's responsibility. The Austins claim that the mere fact of the injury in such a situation signifies negligence on the part of Dr. Lamar. The Austins further maintain that Dr. Lamar has the burden of explaining what happened to Mr. Austin's leg since Mr. Austin was unconscious and Dr. Lamar is the only one who was capable of explaining how the injury occurred. The Austins conclude that since Dr. Lamar did not or could not explain how the injury occurred then he should be strictly liable for the injury to Mr. Austin's leg.

¶16. Because the Austins bear the burden of persuasion on appeal, this Court will not consider issues on appeal for which the appellant cites no supporting authority. *Read v. Southern Pine Elec. Power Ass'n*, 515 So. 2d 916 (Miss. 1987); *R.C. Petroleum, Inc. v. Hernandez*, 555 So. 2d 1017, 1023 (Miss. 1990). Therefore, we decline to consider this issue on appeal. We therefore affirm the summary judgment in favor Dr. Wayne T. Lamar and Baptist Memorial Hospital-North Mississippi.

¶17. **THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, AND PAYNE, JJ., CONCUR. SOUTHWICK, P.J., CONCURS IN RESULT ONLY. MOORE, J., NOT PARTICIPATING.**