PALMER *v.* CLARKSDALE HOSPITAL, et al.

In Banc. May 23, 1949.

(40 So. (2d) 582)

V. J. Brocato and Stovall Lowrey, for appellant.

**Brewer & Brewer,** for appellees.

**Hall, J.**

Appellant brought suit against Clarksdale Hospital, and its Superintendent, Miss Louise Francis, for the recovery of damages for injuries to her feet while a patient for hire in said hospital during the course of a major operation upon appellant. At the conclusion of the evidence for plaintiff the trial court, on motion of defendants, excluded all the evidence and peremptorily directed

a verdict for defendants, which action is assigned as error.

The declaration charged that appellee, Miss Francis, as agent and employee of the hospital, was acting as attendant and circulating nurse in the operating room and that she negligently fastened the plaintiff's feet to the operating table, by the use of straps, in such manner that the blood circulation in plaintiff's feet was cut off, and that plaintiff was kept in such condition and situation without any loosening or releasing of said straps to restore blood circulation for such length of time that her feet were seriously and permanently injured.

The proof showed that the operation had no connection with or effect upon appellant's feet, and that she fully recovered therefrom in a short time and would have been able to resume her household duties and her usual routine but for the injuries to her feet which, at the time of the trial, had disabled her for a period of about sixteen months. These injuries consisted of two gangrenous sores, one on the outside of each foot below the ankle, which for a long period of time resisted the efforts of medical science toward effecting a cure. At the time of the trial one had about healed and the other had not, and, according to the medical testimony, the injuries are permanent.

It was shown that appellant's feet were entirely normal when she went into the operating room, that her feet were strapped for about forty-five minutes during the operation, that the straps were not loosened during that time, that appellant was removed to a private room in the hospital after the operation and when she came from under the influence of the anaesthetic about two hours later her feet were hurting. This was about 1 P.M. and about that time a special nurse came on duty, privately employed by appellant's husband. This nurse changed appellant's position in the bed. Appellant's feet continued to hurt, and about 3 P. M. this nurse placed a hot water bottle to the bottom of appellant's feet. The nurse

testified that the water bottle was not hot enough to cause a burn. Appellant was conscious at the time and testified that she felt no discomfort from the heat of the water bottle. This was the only time that a water bottle was applied to her feet.

At about 2 or 3 o'clock, A. M. a bluish purple spot had appeared on the outside of each foot, where the gangrenous sores later developed. By 7 A. M. they were worse and by night there was fluid underneath the skin in each spot. The attending nurse testified that these places did not appear to be burns. They were very slow in responding to treatment.

Miss Francis was called as an adverse witness. She said that she had no independent recollection of being in the room during the operation but that the hospital chart shows that she was there and was acting as circulating nurse on this operation and that the chart is correct. The circulating nurse is the one who handles things that are not sterile, and has such duties as strapping a patient's feet to the table, and on this occasion it was her duty to strap appellant's feet. She admitted that she did not loosen these straps or relieve the pressure at any time during the forty-five minutes that they remained on appellant's feet. She admitted that gangrene may result if the circulation of blood is cut off for more than fifteen or twenty minutes, and further admitted that such result might follow from the use of these footstraps if they were tight enough to cut off the circulation, but maintained that she did not believe these straps could be made that tight.

Miss Francis produced the straps in question and demonstrated to the jury how they are fastened to the feet. For one of her subjects she used the physician who had treated appellant for these injuries. This physician testified before the jury, after Miss Francis had fastened the strap to one of his feet, and he demonstrated that the strap tightens from the weight of the foot and leg, and would continue to tighten from such weight.

In the oral argument before this Court, counsel for appellee produced one of these straps and demonstrated on his own foot how it is applied and then suspended with the weight of the foot and leg therein. This demonstration corroborates the physician's statement to the jury that continued weight would continue to tighten the straps. It is significant to note that these straps bind the feet at the very place where the gangrenous sores appeared on the appellant's feet.

Appellees argue throughout their brief, and apologize for their repeated statements, that the injuries here were caused by the negligence of appellant's privately employed nurse in placing too hot a water bottle to appellant's feet, but there is absolutely nothing in the record before us to justify such contention. The evidence shows conclusively that the water bottle was applied to the bottom of appellant's feet and not to the outside of each foot.. It is inconceivable that a hot water bottle could have been placed in such a maner as to blister one place on the outside of each foot, both in identically the same location, without also blistering some other part of the feet. Furthermore, as already pointed out herein, the nurse testified that the water bottle was not hot enough to cause a burn, and appellant testified that it was not hot enough to cause her any discomfort. In fact she was complaining of pain in her feet before the water bottle was applied.

There was no defect in appellant's feet when she went into the operating room. She was there placed under an anaesthetic and rendered unconscious, so that she was unable to take care of herself or make complaint of anything that was done to her. The straps were placed upon her feet and were kept there, suspending the weight of her feet and legs, without release or loosening to restore circulation, for about forty-five minutes. Nothing touched appellant's feet that could have caused this injury except these straps. The demonstration made before the jury, coupled with the testimony of appellant's

physician, was such that the jury could have found, as reasonable men, that the straps continued to tighten upon appellant's feet to the extent of obstructing the circulation of blood therein, and that reasonable care on the part of appellees required a temporary loosening of these straps, and that a failure therein proximately caused the injuries to appellant. In fact, the evidence excluded every causal connection except the straps, and we are of the opinion that the lower court erred in excluding the evidence and refusing to submit the case to the jury for decision.

A well reasoned case which we think is quite applicable to the facts here presented is Ybarra v. Spangard, 25 Cal. (2d) 486, 154 P. (2d) 687, 689, 162 A.L.R. 1258. The plaintiff in that case underwent an operation for appendicitis; prior to the operation he had never had any pain in or injury to his right arm and shoulder. When placed on the operating table he was pulled to the head of the table upon two hard objects which made contact with the top of his shoulders about an inch below his neck. When he awakened from the anaesthetic, after the operation, he felt a sharp pain about halfway between the neck and right shoulder. The pain grew more intense and spread down to the lower part of his arm and continuously became worse, resulting eventually in a permanent impairment. Upon these facts the trial court directed a verdict against the plaintiff. Upon appeal the California Supreme Court, in reversing the action of the trial court said:

"The doctrine of res ipsa loquitur has three conditions: '(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.' Prosser, Torts, p. 295. It is applied in a wide variety of situations, including cases of medical or dental treatment and hospital

care. Ales v. Ryan, 8 Cal. (2d) 82, 64 P. (2d) 409; Brown v. Shortlidge, 98 Cal. App. 352, 277 P. 134; Moore v. Steen, 102 Cal.App. 723, 283 P. 833; Armstrong v. Wallace, 8 Cal. App. (2d) 429, 47 P. (2d) 740; Meyer v. Mc-Nutt Hospital, 173 Cal. 156, 159 P. 436; Vergeldt v. Hartzell, 8 Cir., 1 F. (2d) 633; Maki v. Murray Hospital, 91 Mont. 251, 7 P. (2d) 228; Whetstine v. Moravec, 228 Iowa 352, 291 N.W. 425; see Shain, Res Ipsa Loquitur, 17 So. Cal. L. Rev. 187, 196.

''There is however, some uncertainty as to the extent to which res ipsa loquitur may be invoked in cases of injury from medical treatment. This is in part due to the tendency, in some decisions, to lay undue emphasis on the limitations of the doctrine, and to give too little attention to its basic underlying purpose. The result has been that a simple, understandable rule of circumstantial evidence, with a sound background of common sense and human experience, has occasionally been transformed into a rigid legal formula, which arbitarily precludes its application in many cases where it is most important that it should be applied. If the doctrine is to continue to serve a useful purpose, we should not forget that 'the particular force and justice of the rule, regarded as a presumption throwing upon the party charged the duty of producing evidence, consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him but inaccessible to the injured person.' 9 Wigmore, Evidence, 3d ed., § 2509, p. 382; see, aso, Whetstine v. Moravec, 228 Iowa 352, 291 N.W. 425, 432; Ross v. Double Shoals Cotton Mills 140 N. C. 115, 52 S.E. 121, 1 L.R.A., N.S., 298; Maki v. Murray Hospital, 91 Mont. 251, 7 P (2d) 228, 231. In the last-named case, where an unconscious patient in a hospital received injuries from a fall, the court declared that without the doctrine the maxim that for every wrong there is a remedy would be rendered nugatory, 'by denying one, patently entitled to damages, satisfaction merely because he is ignorant of facts peculiarly within

the knowledge of the party who should, in all justice, pay them.'

"The present case is of a type which comes within the reason and spirit of the doctrine more fully perhaps than any other. The passenger sitting awake in a railroad car at the time of a collision, the pedestrian walking along the street and struck by a falling object or the debris of an explosion, are surely not more entitled to an explanation than the unconscious patient on the operating table. Viewed from this aspect, it is difficult to see how the doctrine can, with any justification, be so restricted in its statement as to become inapplicable to a patient who submits himself to the care and custody of doctors and nurses, is rendered unconscious, and receives some injury from instrumentalities used in his treatment. Without the aid of the doctrine a patient who received permanent injuries of a serious character, obviously the result of some one's negligence, would be entirely unable to recover unless the doctors and nurses in attendance voluntarily chose to disclose the identity of the negligent person and the facts establishing liability. See Maki v. Murray Hospital, 91 Mont. 251, 7 P. (2d) 228. If this were the state of the law of negligence, the courts, to avoid gross injustice, would be forced to invoke the principles of absolute liability, irrespective of negligence, in actions by persons suffering injuries during the course of treatment under anesthesia. But we think this juncture has not yet been reached, and that the doctrine of res ipsa loquitur is properly applicable to the case before us.

"The condition that the injury must not have been due to the plaintiff's voluntary action is of course fully satisfied under the evidence produced herein; and the same is true of the condition that the accident must be one which ordinarily does not occur unless someone was negligent. We have here no problem of negligence in treatment, but of distinct injury to a healthy part of the body not the subject of treatment, nor within the area covered

by the operation. The decisions in this state make it clear that such circumstances raise the inference of negligence and call upon the defendant to explain the unusual result. See Ales v. Ryan, 8 Cal. (2d) 82, 64 P. (2d) 409; Brown v. Shortlidge, 98 Cal.App. 352, 277 P. 134.''

In 38 Am.Jur. 989, Negligence, Sec. 295, it is said: ''While the mere fact of an injury will not give rise to a presumption of negligence on the part of anyone under the doctrine of res ipsa loquitur, an expression which means, literally, the transaction speaks for itself, the facts or circumstances accompanying an injury may be such as to raise a presumption, or at least permit an inference, of negligence on the part of the defendant. The conclusion to be drawn from the cases as to what constitutes the rule of res ipsa loquitur is that proof that the thing which caused the injury to the plaintiff was under the control and management of the defendant, and that the occurrence was such as in the ordinary course of things would not happen if those who had its control or management used proper care, affords sufficient evidence, or, as sometimes stated by the courts, reasonable evidence, in the absence of explanation by the defendant, that the injury arose from or was caused by the defendant's want of care. Hence, the occurrence of an injury under the circumstances as set forth permits an inference, or in the terminology of some courts, raises a presumption, that the defendant is guilty of negligence. It has been said that the phrase 'res ipsa loquitur' is a symbol for the rule that the fact of the occurrence of an injury, taken with the surrounding circumstances, may permit an inference of culpability on the part of the defendant, make out plaintiff's prima facie case, and present a question of fact for defendant to meet with an explanation. In the language of a leading case, 'where the circumstances of the occurrence that has caused the injury are of a character to give ground for a reasonable inference that if due care had been employed by the party charged with care in the premises, the thing that hap-

pened amiss would not have happened,' negligence may fairly be inferred in the absence of any explanation."

It will be noted from the above authorities that the doctrine of res ipsa loquitur does not in any instance create a case of absolute liability, but simply raises a presumption or makes out a prima facie case of negligence to the extent that the defendant is called upon to meet it with an explanation. Aside from the stated doctrine, and without applying the familiar Latin phrase thereto, the same result is effected under the general rules applying to circumstantial evidence. In 38 Am. Jur. p. 1032, Negligence, Sec. 33, these rules are stated as follows:

"The law does not require every fact and circumstance which make up a case of negligence to be proved by direct and positive evidence or by the testimony of eyewitnesses. Proof of the fact of negligence may rest entirely in circumstances; in other words, circumstantial evidence alone may authorize a finding of negligence. Hence, negligence may be inferred from all the facts and attendant circumstances in the case, and where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inference from established facts, a prima facie case is made. The causal connection between an agency and the injury complained of need not be shown by direct evidence."

It has been repeatedly held in this state that the owner or proprietor of a private hospital, operated for profit, is liable in damages for the negligence of his employees. Richardson v. Dumas, 106 Miss. 664, 64 So. 459; Meridian Sanatorium v. Scruggs, 121 Miss. 330, 83 So. 532; Maxie v. Laurel General Hospital, 130 Miss. 246, 93 So. 817.

In Richardson v. Dumas, supra, without mentioning the phrase "Res Ipsa Loquitur," this Court said [106 Miss. 664, 64 So. 460]: "The court erred in not submitting this case to the jury. Matthew Richardson, the patient,

was under the control and care of appellee and his employe, the nurse. Under the contract it was the duty of appellee to give the patient all the attention required. The facts presented by the evidence, the very nature of the occurrence, shows a prima facie case of negligence in failing to exercise due care in nursing and looking after the patient.''

In the case of Maxie v. Laurel General Hospital, supra, a child eight years of age was removed to a private room in the hospital following an appendectomy performed upon her. While alone and unattended she fell from the bed to the floor; her temperature rapidly rose, and she died in a few hours. The plaintiffs in that case were unable to prove how or why the child fell from the bed, nor were they able to prove by direct evidence that there was any causal connection between the fall and the death of the child. The trial court directed a verdict for the defendant and that action was reversed by this Court. In so doing, the Court said: ''In considering the propriety of a directed verdict the evidence in favor of the party against whom such a verdict is given must be treated as proving every material fact which it either proves directly or by reasonable inference. Viewing the evidence in this case, in that light, we find that this child was left in a ward in the appellee hospital alone and without an attendant or any means of calling assistance, and while so situated the child for some reason fell from its bed, and its temperature soon thereafter went rapidly up and in a few hours it died. No good purpose could be served by setting out the evidence in detail. It is sufficient to say the liability of appellee was a question for the jury.''

It will again be noted that in the Maxie case the Court did not use the aforesaid Latin phrase, but the Court did hold that from the circumstances in evidence a reasonable inference of negligence could be drawn by the jury.

The case presented by the record here rises above the domain of mere conjecture or possibility and presents facts and circumstances from which a jury might

reasonably find that the appellees were guilty of negligence proximately contributing to appellant's injury. It matters not whether our decision be grounded upon the doctrine of res ipsa loquitur as interpreted by some of the courts and textbook writers, or whether it be that the case here presented is based upon circumstantial evidence from which a reasonable inference or presumption of negligence may be drawn, we are nevertheless of the opinion that appellant's case should have been submitted to a jury for decision, and that consequently the exclusion of appellant's evidence and the direction of a verdict against her was erroneous. The judgment of the lower court is accordingly reversed and the cause remanded.

Reversed and remanded.

**Alexander, J.** (dissenting).

The controlling point in this case is not the fact, or extent, of the injuries suffered by the appellant, nor the probability that they were caused by the straps, but is whether the injuries were suffered as the result of the appellees' negligence. It is not enough to determine the cause of an injury. The testimony for the plaintiff herself by the attending nurses and physicians shows that the straps used were of a type generally employed by hospitals and that no similar injury had ever been known to result from such use. There was no testimony that such an injury was probable. It is not enough that a certain injury be possible, for no liability may rest upon suspicion, conjecture or mere possibility. Missouri Pac. Transp. Co. v. Beard, 179 Miss. 764, 176 So. 156; Yazoo & M. V. R. Co. v. Lamensdorf, 180 Miss. 426, 177 So. 50, 178 So. 80; Kramer Service, Inc., v. Wilkins, 184 Miss. 483, 186 So. 625; Southern Ry. Co. v. Buse, 187 Miss. 752, 193 So. 918; Equitable Life Assur. Soc. of United States v. Mitchell, 201 Miss. 696, 29 So. (2d) 88.

The injuries suffered by appellant are grievous but must be considered damnum absque injuria unless it can

be shown that this injury was forseeable as a reasonable probability. A party is under no legal duty to guard against the improbable. There is nothing shown which would impose on the defendant an obligation to take precautions against that which it had no reason to foresee. Kramer Service, Inc., v. Wilkins, supra.

It may be that the burden of proof resting upon the plaintiff was insuperable, but our concern is not for the explanation but for the fact.

I do not find in this case an occasion to apply the doctrine res ipsa loquitur. This doctrine never supplies the cause of the injury but allows a deduction of negligence from an established cause. Sanders v. Smith, 200 Miss. 551, 27 So. (2d) 889.

I am authorized to state that the **Chief Justice** joins in this dissent.