209 So.2d 814 (1968)
Dr. John W. LONG and Dr. W. Andrew Sweat
v.
Johnnie C. SLEDGE, Jr.
No. 44794.
Supreme Court of Mississippi.
April 29, 1968.
*815 Butler, Snow, O'Mara, Stevens & Cannada, Jackson, for appellants.
Sullivan, Sullivan & Keyes, Jackson, for appellee.
INZER, Justice:
This is a malpractice suit. It is before us on appeal by Dr. John W. Long and Dr. W. Andrew Sweat from the Circuit Court of the First Judicial District of Hinds County wherein that court entered a judgment on the jury's verdict in favor of appellee, Johnnie C. Sledge, Jr., awarding damages in the amount of $24,529.97.
The evidence established that in the latter part of November, 1964 appellee was being treated by Dr. Earl Fyke of Jackson. Appellee was admitted to the Baptist Hospital in Jackson on November 30, 1964. It was determined through x-rays and other means that appellee had an esophageal hernia and gastritis. Dr. Fyke called in appellant, Dr. Long, a surgeon, for consultation. It was decided that appellee should undergo surgery to correct the hernia. Dr. Long, assisted by his partner, Dr. Sweat performed the operation on December 11, 1964. The operation took approximately five hours. Appellee was discharged from the hospital on December 20, 1964. On December 23 he was carried to Dr. Long's office for a post-operative check. He informed Dr. Long that he had had a black bowel movement on that day. This indicated to Dr. Long that there was a recurrence of internal bleeding. Dr. Long sent *816 appellee to Dr. Fyke's office for a blood check. Dr. Fyke was out of town but his partner Dr. Stephenson checked his blood. Dr. Stephenson was of the opinion that there was some internal bleeding and again admitted appellee to the hospital. Dr. Stephenson prescribed medication and the bleeding was stopped. From the time of the operation, appellant complained of pain in his side, especially when he moved or changed positions. On December 23, 1964, Dr. Stephenson informed appellee that he could leave the hospital that afternoon. Dr. Long examined appellee later that day and requested that appellee remain in the hospital and have additional x-rays made to determine the source of his pain. This appellee agreed to do. On December 28 appellee was x-rayed by Dr. James M. Packer, a radiologist. After making one picture Dr. Packer immediately sent appellee back to his room. The picture revealed a foreign object within appellee's abdomen: a scissors-shaped tonsil hemostat made of stainless steel, about eight inches long. (See attached exhibit) Dr. Packer immediately
 *817 reported his finding to Dr. Stephenson who informed Dr. Long. Dr. Long then went to the hospital and examined the x-ray. He then had Dr. Packer complete the x-ray series. After this was done, Dr. Long informed appellee that during the previous operation he had left the hemostat in his abdomen and that appellee would have to undergo another operation the next morning to remove this object. The operation was performed and the hemostat removed. Appellee remained in the hospital until January 7, 1965, when he was allowed to return home. He was not able to return to full-time work until June, 1965.
Appellee filed suit against Dr. Long, Dr. Sweat, The Mississippi Baptist Hospital and Dr. Gene Ellis Crick, an employee of the hospital, seeking to recover damages for their negligence in leaving the foreign object in his abdomen.
The defendants The Mississippi Baptist Hospital and Dr. Crick filed separate answers and denied that they were guilty of any negligence that caused or contributed to the alleged damages. Dr. Long and Dr. Sweat filed a joint answer in which it was admitted that during the performance of the surgery a hemostat clamp was used for the purpose of clamping and suturing a blood vessel and this clamp was left in appellee's abdomen. As an affirmative defense they alleged that during the course of the operation it became necessary to perform a splenectomy and while so doing, the hemostat clamp was removed from the field of view and was accidently left in appellee's abdomen, but through no negligence of appellants.
A trial was had and during its course a non-suit was taken by appellee as to The Mississippi Baptist Hospital and Dr. Crick and they are no longer parties to this litigation. At the conclusion of all the testimony, appellee requested a peremptory instruction on the question of liability. This instruction was refused. The issues were submitted to a jury and it returned a verdict in favor of appellants. Appellee then filed a motion for a judgment notwithstanding the verdict of the jury and a motion for a new trial. The trial judge sustained the motion for a judgment notwithstanding the verdict for the reason that it was his opinion that he was in error in failing to grant a peremptory instruction on the question of liability.
In due course, another trial was had on the question of damages and the jury returned a verdict in favor of appellee in the amount of $24,529.97.
The first assignment of error is that the trial court was in error in sustaining appellee's motion for a judgment notwithstanding the verdict. It is the contention of appellants that at the conclusion of all the evidence it was a question for the jury to determine whether the leaving of the hemostat clamp in appellee's abdomen under the circumstances constituted negligence.
In Newport v. Hyde, 244 Miss. 870, 875, 147 So.2d 113, 115 (1962) we stated the basis of liability of a physician in malpractice cases to be as follows:
Malpractice liability may result either through lack of skill or neglect to apply it, if possessed. The two are separate, distinct basis of liability.
However, in cases where the alleged malpractice involves the leaving of a foreign object or substance in a patient's body by a surgeon, the following rule is extended or implemented by the rule first announced by this Court in Saucier v. Ross, 112 Miss. 306, 314, 73 So. 49, 50 (1916). This case involved a suit by Mrs. Saucier against Dr. Ross wherein she charged that he left a four-inch long rubber tube in her body after an operation. Dr. Ross did not deny that he left the tube in Mrs. Saucier's body, but at the conclusion of the plaintiff's case the trial court sustained a motion by Dr. Ross to exclude the evidence and direct the jury to find for him. In reversing that case the Court said:
Upon motion, the trial judge excluded the plaintiff's testimony. This was error. *818 Unexplained, the leaving of a four-inch rubber tube in a patient's body by a physician is negligence, and it occurs to us that it would be very difficult for a physician to explain how he could leave a rubber tube in a patient's body, until the wound healed over same, and not be guilty of negligence in the treatment of his patient.
In the case before us appellants admit that they left the eight-inch scissors-shaped tonsil hemostat in appellee's body. They seek to avoid liability by what amounts to a plea of confession and avoidance in that they were confronted with a sudden emergency during the course of the operation, which emergency caused them to leave the hemostat in appellee's body.
Under this plea appellants assumed the burden of proof of the sudden emergency and that it was of such nature as to exculpate them from negligence.
The evidence relative to the explanation offered by Dr. Long is that when he performed the original operation he made an incision some ten inches long on appellee's right side from near the breastbone downward to the left side of the navel. The first thing he did was to examine appellee's stomach to see if there was any evidence of a tumor. He found no induration of the stomach or duodenal bulb. They were clear of any defects that he could see or feel. He then explored the rest of the abdomen looking at the liver, gall bladder, pancreas, the large and small intestine. What he could not see, he examined by feeling. He found nothing wrong in the exploration and then went ahead to repair the hernia. In order to do so it was necessary for him to cut a suspensory ligament to which the left lobe of the liver was attached. The lobe of the liver was then folded under and held back from the field of observation by the use of a laparotomy sponge and a heartshaped retractor. Dr. Long found that appellee had what he termed a sliding esophagael hernia. This type of hernia allows the stomach to slide from the abdomen up into the chest and in order to repair the hernia it was necessary to pull the stomach from the chest into the abdomen. Dr. Long had Dr. Sweat pull down on the stomach while he was clamping bleeders. In the process of dissecting the hernia, he clamped a bleeder with long clamps and while in the process of tying the lower end of the blood vessel he noticed blood coming from the location of the spleen. The bleeding was very brisk. Dr. Long considered this an emergency and dropped everything he was doing and immediately examined the spleen and found that this was the source of the bleeding. It was Dr. Long's opinion that the spleen had been inadvertently torn while they were pulling down on appellee's stomach. He proceeded to remove the spleen. When the spleen was removed, Dr. Long went back to repair the hernia. He said that evidently the clamp was pushed aside and out of his field of view and he admitted that he forgot or in his words "neglected to remember about the clamp being on the blood vessel." After the operation was completed appellee was sutured up and the hemostat clamp was left in his abdomen although Dr. Long stated he made a physical exploration of appellee's abdomen before he closed the incision. Dr. Long stated that it was a general practice to count sponges during an operation but it was not a practice to count the clamps. Dr. Long charged appellee $350 for performing the hernia operation but made no charge for the operation to remove the hemostat. He said, "I just didn't feel like charging the man for that."
The question arising from the foregoing facts, which are practically undisputed, is whether the so-called sudden emergency exculpates Dr. Long from negligence in leaving the hemostat in the abdomen of appellee. First there is a serious question whether the sudden emergency doctrine has any application under the facts of this case. The emergency was the rupture of the spleen which Dr. Long states was inadvertently caused by the pulling down of the stomach to remove it *819 from the hernia. According to the doctor's testimony it appears that this was something that might be reasonably foreseen. In any event, the alleged emergency existed for only a relatively short time. As soon as the spleen was removed the emergency was over and had safely passed. The only effect that the emergency had was to divert Dr. Long's attention from what he was doing at the moment and while in the process of overcoming the emergency, the hemostat was pushed out of his sight. Of course, he would ordinarily return to that part of the operation that he was performing at the time the emergency arose. However, Dr. Long forgot that he was in the process of tying off the blood vessel and that he still had the upper end of the vessel clamped. We are of the opinion that his failure to remember constitutes negligence.
Furthermore, it is apparent that if Dr. Long had made a proper exploration of appellee's abdomen after the operation, he certainly should have discovered an object as large as this hemostat. In fact, in his report to the hospital he stated, "It is difficult to understand how this large instrument could be left in the abdominal cavity." When in the opinion of the surgeon the life of his patient is being jeopardized by the operation, he has in some courts been exculpated from negligence in failing to make a thorough exploration before closing the incision. Appellants were not faced with such an emergency nor did they so contend. We are of the opinion that Dr. Long's own testimony shows that he was guilty of negligence in leaving the instrument in the abdominal cavity of appellee and that the trial court should have granted a peremptory instruction requested by appellee instructing the jury that as a matter of law Dr. Long was guilty of negligence. It follows that the action of the trial court in sustaining the appellee's motion for a judgment notwithstanding the verdict of the jury was correct.
Appellants assign as error the refusal of the trial court to require appellee to produce copies of his income tax return for the years, 1962, 1963 and 1964. The application was made by an unsworn motion. The motion was an attempt to invoke the provisions of Section 1659, Mississippi Code of 1942 Annotated (1956). This section provides that the court may, on good cause shown after notice, require the opposite party to produce books, papers, or documents, etc. for inspection and making copies thereof. However, the provisions of this section are not mandatory and the trial judge has some discretion in the matter. The motion did not positively allege that appellee had copies of his income tax returns in his possession, but requested the court to require him to obtain copies if he did not have such copies in his possession. No allegation was made that the inspection had been refused by the opposite party. Furthermore, the statute is penal and the powers granted therein should be exercised with caution. The statute also provides that it does not apply to matters of privilege. Appellee contended that his income tax returns were privileged. However, it is not necessary for us to determine whether appellee's income tax returns are privileged since we cannot say that the trial court abused its discretion in overruling the motion. The information desired was available by means of subpoena duces tecum requiring the company for which appellee worked to produce their records showing the business produced by appellee in the years in question. Appellants admit that there was information reflected by these returns that they would not be entitled to see. They offered to let the trial judge ascertain what information they were entitled to see. The trial judge apparently did not care to have this responsibility and since appellants had other means of obtaining the information we cannot say that he abused his discretion in this regard, especially is this true since an unsworn motion is not a showing of good cause. Equitable Life Assur. Soc. v. Clark, 80 Miss. 471, 31 So. 964 (1902).
*820 The only other assignment of error that we deem necessary to discuss is the assignment that the verdict of the jury is so excessive that it evinces bias, passion and prejudice on the part of the jury. Appellants point out that appellee's medical expenses in connection with the operation for the removal of the hernia amounted to $990.10 and there was a question of whether all of this was incurred because of the hemostat being left in appellee's body. They further point out that taking appellee's figures at the most, he suffered a loss of income by reason of his second operation of about $6,019.45. It is contended that there is a question as to whether appellee was entitled to all or two-thirds of the amount of business that he produced for his company. Appellee testified relative to the pain and suffering that he underwent as a result of leaving the hemostat in his body and the operation necessary to remove it. His wife testified that after Dr. Long informed appellee that he left the hemostat in his body that appellee was in a state of shock. He was crying and worried as to whether he would be able to stand another major operation in such a short time. It is true that after the first operation until the time of the second operation appellee was not in constant pain as a result of the instrument being left in his body. During this time he was confined to his bed and could get his body in a position where the presence of this instrument in his body did not cause pain. After the operation he underwent the usual post-operative pain and anxieties that naturally follow a major operation, especially when that operation comes within a short time after the first operation. Dr. Fyke testified that it was unlikely that appellee would have any permanent disability as a result of the second operation. However, the fact remains that he was forced to undergo this operation solely because of the negligence of appellants in leaving this large instrument in his abdominal cavity and the jury had the right to consider the evidence relative to the effects of a major operation. Fixing the amount of damages is primarily the function of the jury. We have said in many cases that the fixing of damages in a personal injury case is a difficult thing to do and we will not disturb the verdict of the jury unless the amount is so excessive or so small as to be against the great weight of the evidence and shows that the verdict is the result of bias, passion and prejudice. The jury had the opportunity to see and hear the witness testify. They considered the testimony in this case and fixed the monetary value of appellee's damages. The trial judge likewise heard the testimony and observed the witnesses and he was of the opinion that the verdict of the jury was not so large as to evince bias, passion and prejudice. While we are not bound by his decision, his action upon the motion for new trial upon the ground of excessive or inadequacy of the verdict will be favorably considered by us on appeal and will be upheld unless manifest error appears or we can say that he abused his discretion. We have carefully considered the evidence in this case and we cannot say that from the whole evidence that the verdict of the jury is so large as to shock our conscience or that it is the result of bias, passion and prejudice on the part of the jury.
For the reasons stated, we are of the opinion that this case should be affirmed.
Affirmed.
GILLESPIE, P.J., and RODGERS, JONES and BRADY, JJ., concur.