## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-01040-SCT

***BARBARA BROWN, INDIVIDUALLY AND AS GUARDIAN OF WILLIAM JETUAN BROWN***

***v.***

***BAPTIST MEMORIAL HOSPITAL- DESOTO, INC., AND DR. HAI V. DANG***

| | |
|---|---|
| DATE OF JUDGMENT: | 5/23/2000 |
| TRIAL JUDGE: | HON. GEORGE B. READY |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SIDNEY FRANKLIN BECK, JR. |
| ATTORNEYS FOR APPELLEES: | MICHAEL N. WATTS |
| | ANGELA M. SPIVEY |
| | ROBERT LEWIS MOORE |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 02/07/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/28/2002 |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1. Barbara Brown (Brown) appeals both individually and as guardian on behalf of William Jetuan Brown (William) from a summary judgment for the Baptist Memorial Hospital-DeSoto, Inc. (Baptist) and Dr. Hai V. Dang (Dr. Dang). Brown's expert witness failed to testify that Dr. Dang was negligent or failed to meet the standard of care as required in medical negligence claims. Furthermore, since Brown's expert witness and Dr. Dang both testified that the injury could have been caused by factors other than negligence, we, therefore, conclude that the doctrine of res ipsa loquitur is not applicable to the facts of this case and affirm the judgment of the trial court.

## FACTS

¶2. Brown went into labor and was admitted at Baptist on October 12, 1994, under the care of Dr. Dang. As the labor progressed, Brown experienced complications when the infant's shoulders became stuck in the pelvic outlet, a medical condition labeled shoulder dystocia. To alleviate the problem, Dr. Dang performed the McRobert's maneuver which entails bending the mother's legs upward at the knee until her thighs rest against her abdomen, while an attendant applies suprapubic pressure to dislodge the infant. Following this procedure, Brown's son, William, was born.

¶3. An attendant noticed an injury to the infant's shoulder when he arrived in the nursery. The next day, the

infant was diagnosed with Erb's Palsy, a condition characterized by partial paralysis of shoulder and arm muscles.

¶4. In October 1996, Brown, individually and on behalf of her minor child, sued Baptist and Dr. Dang alleging that her minor child suffered injuries, specifically the development of Erb's Palsy, due to the negligence of Dr. Dang and the hospital's employees. Baptist filed its answer denying any liability. Dr. Dang answered the complaint alleging that the shoulder dystocia which occurred during the delivery and Erb's Palsy, which resulted from that complication, were complications inherent in the birthing process itself and that these complications could not have been reasonably foreseen, nor avoided, through the exercise of reasonable and ordinary care.

¶5. During discovery, depositions were obtained from Dr. Dang, the attending physician, and Dr. Selman Welt (Dr. Welt), Brown's expert witness. Dr. Dang testified that Erb's Palsy is usually caused by the over extension of the brachial plexus, where there is a tear on the top of the brachial nerve. He stated that the injury is one of the complications of the delivery and that he did not know when the injury to the brachial nerve occurred. Dr. Welt did not contradict this view.

¶6. In April, 1999, after the completion of discovery, Dr. Dang filed a motion for summary judgment in which Baptist later joined. The court issued an order denying summary judgment in July, 1999. After the denial of summary judgment, Dr. Dang filed a motion in limine requesting an order limiting the opinions of Brown's expert witness to the opinions set forth in a prior discovery deposition. The court subsequently issued an order restricting the opinions and factual bases to those set forth in the deposition.

¶7. Baptist and Dr. Dang filed renewed motions for summary judgment or alternatively motion to amend judgment. In May, 2000, the trial court granted Baptist and Dr. Dang summary judgment. Brown filed a timely notice of appeal.

## DISCUSSION

### I. Whether there exists a rebuttable presumption of negligence under the doctrine of res ipsa loquitur thereby preventing summary judgment for Baptist and Dr. Dang?

¶8. A motion for summary judgment is granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R.C.P. 56(c); *Brown v. Credit Ctr., Inc*., 444 So.2d 358, 362-63 (Miss. 1983). This Court reviews summary judgments under a de novo standard and views the evidence in the light most favorable to the non-moving party. *Mosby v. Moore*, 716 So. 2d 551, 557 (Miss. 1998); *Brown*, 444 So.2d at 363.

¶9. Brown asserts that either negligence or some trauma externally inflicted on the child in the birthing process caused injury to the infant. She argues that as in *Palmer v. Clarksdale Hosp.*, 206 Miss. 680, 40 So.2d 582 (1949), the doctrine of res ipsa loquitur applies in the instant case because an inference of negligence is raised. *See also* *Coleman v. Rice*, 706 So.2d 696, 698-99 (Miss. 1997).

¶10. In *Palmer*, a patient sued a hospital alleging that an employee of the hospital negligently fastened the patient's feet to the operating table, seriously and permanently injuring her feet. *Palmer*, 40 So.2d at 582. This Court noted that the operation did not involve the patient's feet; the patient's feet were normal before she went into the operating room; her feet were strapped for forty-five minutes without being loosened; and after the patient awakened from the anaesthesia her feet were hurting and later developed gangrenous

sores. *Id.* at 583. This Court also reasoned that the demonstration of the straps and their use, along with the physician's testimony, was such that a reasonable man could conclude that tightening the straps caused the injury and that reasonable care on the part of the physician required a loosening of the straps and failure to do so proximately caused the injuries to the patient's feet. *Id.* Further, this Court stated that the doctrine of res ipsa loquitur was applicable because the occurrence of an injury under the circumstances set forth above permitted an inference or raised a presumption that the defendant was guilty of negligence. *Id.* at 585.

¶11. Brown alleges that, while in *Palmer* the parties knew what instrument caused the injury, the medical records in the instant case fail to depict accurately the process of the delivery; and therefore, it is not clear what instrument could have caused the injury. She reasons that in the instant case we are presented with an infant who started a normal delivery and was injured by unknown circumstances, with an unknown instrumentality. Brown argues the issue is that the physician does not know what caused this injury and cannot give any explanation of how this injury could have occurred. Thus, the doctrine of res ispa loquitur, Brown suggests, should raise a presumption of negligence that Dr. Dang and Baptist should have to rebut.

¶12. This Court has held that in order to prevail in a medical malpractice action, a plaintiff must establish, by expert testimony, the standard of acceptable professional practice; that the defendant physician deviated from that standard; and that the deviation from the standard of acceptable professional practice was the proximate cause of the injury of which plaintiff complains.[1] *Phillips ex rel. Phillips v. Hull*, 516 So.2d 488, 491 (Miss. 1987); *Burnham v. Tabb*, 508 So.2d 1072, 1074 (Miss. 1987).

¶13. Dr. Dang submits that Brown's argument fails because (1) Brown's expert failed to identify any act or failure to act by Dr. Dang or the hospital staff which was the proximate cause of any injury to the infant and (2) the doctrine of res ipsa loquitur is inapplicable to the facts of this case. We agree.

¶14. Dr. Welt, Brown's expert, testified as follows:

Mr. Kennedy: What do you believe went wrong?

(Dr. Dang's attorney)

Dr. Welt: Was done wrong? I believe that a difficult delivery was accomplished and the standard of care was violated through an inadequate description of the process of delivery.

Mr. Kennedy: Is it fair to say that your criticism, at least at this point, is in the documentation of the delivery?

Dr. Welt: Without the documentation, which I am criticizing the absence of, I cannot determine the quality of the service provided to the patient.

Mr. Kennedy: Okay. Other than Dr. Dang's failure to extensively document the birth in this case, is there any other criticisms that you have, based upon your review of the medical records and the deposition of Dr. Dang?

Dr. Welt: No, sir.

Dr. Welt failed to demonstrate that Dr. Dang deviated from the standard of care while treating Brown in a manner which proximately resulted in harm to the patient.

¶15. Nor does the injury, "speak for itself" giving rise to an inference that Dr. Dang was negligent. Dr. Welt and Dr. Dang testified that Erb's Palsy could be caused by factors other than a physician's negligence. Dr. Welt testified as follows:

> Mr. Watts: (Atty for Baptist) And further, isn't it also true that a child may develop Erb's Palsy and there not be any type of conduct on behalf of the physician that fell below the standard of care.

> Dr. Welt: That is correct.

> Mr. Watts: All right. And what you've told us here today is basically limited only to the fact that you have some criticisms about Dr. Dang not delineating after the delivery the steps it went through in the birth of the Brown child so that you or some other physician can look back to see if everything was done proper?

> Dr. Welt: That is correct. If I may expand the baby is born with Erb's Palsy, that's clear, nobody is refuting that in any way. The child is born with Erb's Palsy, we've just said that an Erb's Palsy is generally caused by trauma. Obviously, this whole discussion has revolved around the point that is it the doc's [sic] fault.

¶16. Dr. Dang testified that Erb's Palsy was one of the complications of the delivery. There is no evidence that any act or omission by Dr. Dang caused the injury to the brachial plexus. Both Dr. Welt and Dr. Dang testified that the injury could have been caused by trauma other than Dr. Dang's procedure during the delivery.

¶17. The doctrine of res ipsa loquitur requires four elements: 1) the matter must be within the common knowledge of laymen; 2) the instrumentality causing the damage must be under the exclusive control of the defendant; 3) the occurrence must be such as in the ordinary course of things would not happen if those in control of the instrumentality used proper care; and 4) the occurrence must not be due to any voluntary act on the part of the plaintiff. *Coleman v. Rice*, 706 So.2d at 698.

¶18. The evidence in the instant case does not establish a jury issue on each of these prongs. The causes of Erb's Palsy are not within the common knowledge of laymen, there is no showing of any "instrumentality" that caused damage to the infant and Brown's expert witness acknowledged that the type of injury sustained by the infant could have a variety of causes apart from negligence during delivery. *Id* at 899. Therefore, the doctrine of res ipsa loquitur is not applicable.

## CONCLUSION

¶19. Brown failed to show that Dr. Dang deviated from the requisite standard of care and the facts do not permit an application of the doctrine of res ipsa loquitur to fill that void. Therefore, the judgment of the circuit court is affirmed.

¶20. **AFFIRMED.**

> **PITTMAN, C.J., McRAE, AND SMITH, P.JJ., WALLER, DIAZ, CARLSON AND GRAVES, JJ. CONCUR. COBB, J., NOT PARTICIPATING.**

1. Baptist also submitted a brief and adopted by reference Dr. Dang's Appellee Brief pursuant to Miss. R.

App. P. 28(i).