942 So.2d 284 (2006)
Clyde Douglas HOLT and Mable Holt, Appellants
v.
Jeffery T. SUMMERS, M.D., Appellee.
No. 2005-CA-01181-COA.
Court of Appeals of Mississippi.
November 14, 2006.
*285 Richard Manning Lingle, Jackson, Ronald Henry Pierce, attorneys for appellants.
John Lewis Hinkle, Al Nuzzo, Ridgeland, attorneys for appellee.
Before MYERS, P.J., BARNES and ISHEE, JJ.
BARNES, J., for the Court.
¶ 1. Clyde and Mable Holt appeal the judgment of the Circuit Court of the First Judicial District of Hinds County granting partial summary judgment to Jeffery T. Summers, M.D. and from the circuit court's order dismissing the remaining cause of action for failure to prosecute.
¶ 2. The Holts assert on appeal that the circuit court erred by granting Dr. Summers's motion for partial summary judgment because: (1) expert testimony was not required in this case pursuant to the "layman's" exception; and, (2) the circuit court should have allowed the Holts' negligence claim to proceed to trial based on the doctrine of res ipsa loquitur. The Holts make no argument on appeal nor do they cite any authority challenging the circuit court's characterization of the Holts' case as "stale" and dismissing the remaining claim for failure to prosecute; therefore, we will not address this issue nor will we disturb the circuit court's "Order of Dismissal with Prejudice."[1] Finding no *286 error in the circuit court's grant of partial summary judgment to Dr. Summers, we affirm.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 3. On or about May 18, 1994, Dr. Jefferey T. Summers admitted Clyde Douglas Holt to Surgicare of Jackson at which time Dr. Summers performed an intercostal nerve block upon Mr. Holt. During the course of this procedure, one of Mr. Holt's lungs was punctured. As a result, Mr. Holt required emergency treatment and was subsequently admitted to St. Dominic-Jackson Memorial Hospital.
¶ 4. The Holts[2] filed a complaint on March 8, 1996, claiming that Dr. Summers failed to adequately inform Mr. Holt of the potential risks involved in the intercostal nerve block. Specifically, the complaint alleged, inter alia, that Dr. Summers negligently failed to "advise Mr. Holt of the reasonable risks of the procedure such as lung puncture" and that Mr. Holt would not have consented to the procedure had he been adequately informed. Consequently, the Holts claimed that Dr. Summers committed battery by performing the procedure without informed consent. Additionally, the Holts' complaint alleged that Dr. Summers was liable for Mr. Holt's injuries on the basis of negligence per se.
¶ 5. While the Holts' complaint did not explicitly allege that Dr. Summers negligently performed the intercostal nerve block procedure, language contained in the complaint coupled with references to negligence made in the Holts' responses to Dr. Summers's interrogatories made it clear that the Holts intended to pursue claims based on negligence. In particular, the Holts' interrogatory responses alleged that Dr. Summers negligently performed the intercostal nerve block in as much as Mr. Holt's preexisting medical condition "dictated that the procedure should not have been performed." The Holts cited Dr. Summers's alleged failure to consider Mr. Holt's preexisting medical condition as well as Dr. Summers's alleged failure to "x-ray, examine or otherwise determine if [Mr Holt] was physically capable of having the procedure in question." These assertions made by the Holts were in response to interrogatories designed to elicit (1) whether the Holts intended to pursue a negligence claim against Dr. Summers, and, if so, (2) the basis for same.[3]
¶ 6. The circuit court entered an "Agreed Order Modifying Scheduling Order" *287 on July 30, 1998, which required the Holts to designate their expert witnesses by August 15, 1998. The Holts failed to designate any experts by the scheduling order deadline, and the record does not reflect any effort on the part of the Holts to do so. Citing the Holts' failure to designate expert witnesses, Dr. Summers moved for partial summary judgment on December 9, 1998, asserting that without expert testimony, there was no genuine issue of material fact as to all allegations of medical negligence. The Holts timely responded to Dr. Summers's partial summary judgment motion, arguing that expert testimony was not required under the facts of this case. More precisely, the Holts insisted that the injuries suffered by Mr. Holt were "such that a reasonable lay person [could] find that the Defendant's actions were negligent based upon common lay knowledge."
¶ 7. The circuit court acknowledged that there was a "layman's" exception to the general requirement that expert testimony is required to prove medical negligence; however, the court found the exception inapplicable to the circumstances at bar. Accordingly, the court held that, absent expert testimony in this case, there was no proof of the requisite standard of care applicable to Dr. Summers's conduct during the intercostal nerve block procedure, no proof that Dr. Summers failed to conform to the requisite standard of care, and no proof that Mr. Holt's injuries were caused by Dr. Summers's failure to conform to the requisite standard of care. The court granted Dr. Summers's partial summary judgment motion on April 14, 1999, leaving only the Holts' claim based on lack of informed consent. The remainder of the Holts' claim was dismissed with prejudice on April 21, 2005, for failure to prosecute. Aggrieved, the Holts appeal the circuit court's grant of partial summary judgment asserting that the trial court improperly refused to allow the issue of Dr. Summers's negligence to go to a jury. Finding no merit in the Holts' assignment of error, we affirm.

STANDARD OF REVIEW
¶ 8. This Court employs a de novo standard when reviewing summary judgments. Stallworth v. Sanford, 921 So.2d 340, 341 (¶ 5) (Miss.2006) (citing Davis v. Hoss, 869 So.2d 397, 401 (Miss.2004)). Summary judgment will be granted only where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c).
¶ 9. In a medical negligence action, "the plaintiff bears the burden of producing evidence sufficient to establish the existence of the conventional tort elements of duty, breach of duty, proximate causation, and injury." Palmer v. Anderson Infirmary Benevolent Ass'n, 656 So.2d 790, 794 (Miss.1995) (citing Palmer v. Biloxi Regional Medical Center, Inc., 564 So.2d 1346, 1355 (Miss.1990)). To rebut the defendant's claim in the context of a motion for summary judgment, the plaintiff must produce significant and probative evidence demonstrating that the defendant breached the applicable standard of care and that the breach was the proximate cause of his injuries. Id. Unless the alleged negligent conduct is so obvious that a layman could easily determine fault, "expert testimony is generally required to survive summary judgment and establish the negligence of a physician." Sheffield v. Goodwin, 740 So.2d 854, 856 (¶ 6) (Miss.1999) (citing Coleman v. Rice, 706 So.2d 696, 698-99 (Miss.1997); Travis v. Stewart, *288 680 So.2d 214, 218 (Miss.1996); Palmer, 656 So.2d at 795).

DISCUSSION
¶ 10. The record before this Court does not reflect any effort by the Holts to designate an expert to testify as to the negligence of Dr. Summers. By way of justification, the Holts assert that an expert is not required in this case to allow the issue of medical negligence to be presented to a jury. Instead, the Holts contend that the facts of this case are such that the "layman's" exception to the general rule requiring expert testimony to establish medical negligence is applicable. Furthermore, the Holts take the position that the doctrine of res ipsa loquitur raises a rebuttable presumption of Dr. Summers's negligence. We disagree.
I. WHETHER THE LAYMAN'S EXCEPTION IS APPLICABLE TO THE CASE SUB JUDICE
¶ 11. As discussed above, the general rule is that expert testimony is required to establish the negligence of a physician. Sheffield, 740 So.2d at 856. Only in instances where the issues "are purely factual in nature or thought to be in the common knowledge of laymen" will we apply the "layman's" exception. Palmer, 656 So.2d at 795. We do not agree with the Holts' argument that the issue before this Courtwhether Mr. Holt's injuries were a result of Dr. Summers's negligenceis "purely factual in nature" or within "the common knowledge of laymen." Id.
¶ 12. In their response to Dr. Summers's first set of interrogatories, the Holts asserted that Dr. Summers was negligent inasmuch as Mr. Holt's "preexisting medical condition dictated that the procedure should not have been performed" and that Dr. Summers failed to consider Mr. Holt's condition and history before performing the intercostal nerve block. Further response by the Holts cited the serious and advanced nature of Mr. Holt's emphysema and Dr. Summers's failure to "x-ray, examine or otherwise determine if [Mr. Holt] was physically capable of having the procedure in question." What we find lacking in the record, however, is any indication of: (1) how a lay person is to make the causal connection between Mr. Holt's preexisting medical condition and his injuries; (2) whether a reasonable physician in Dr. Summers's position would have performed the procedure in light of Mr. Holt's preexisting medical condition; (3) whether a reasonable physician would have taken x-rays or taken other steps to determine Mr. Holt's physical suitability for the procedure and (4) what role any of the preceding played in contributing to Mr. Holt's injuries. Without an expert to explain how Dr. Summers breached the applicable standard of care in treating Mr. Holt and the causal connection between that breach and Mr. Holt's injuries, we do not agree that these issues can be decided by a jury of laymen. Stated affirmatively, we conclude that the risks involved in an intercostal nerve block procedure, the impact that emphysema or other medical history may have on these procedures, and the proper precautions that a physician should take with respect to those risks and patient history, are not pure questions of fact within the common knowledge of laymen. Accordingly, the layman's exception is not applicable to this case.
II. WHETHER THE DOCTRINE OF RES IPSA LOQUITUR OPERATES TO RAISE A REBUTTABLE PRESUMPTION OF NEGLIGENCE IN THIS CASE
¶ 13. Based on their characterization of the lung puncture and intercostal nerve block as "unrelated" and "remote," the Holts assert that sufficient evidence *289 exists to demonstrate Dr. Summers's negligence through the doctrine of res ipsa loquitur. We disagree.
¶ 14. First, the Holts' brief repeatedly characterizes the injuries suffered by Mr. Holt as occurring "during an unrelated medical procedure on another part of Mr. Holt's body." We are not convinced by this characterization as there is nothing in the record to establish that an intercostal nerve block is unrelated and remote from the area of the body in which the human lung is situated nor do we find that such knowledge is within the realm of conventional wisdom. Furthermore, the Holts' original claim based on informed consent necessarily presupposes the exact opposite characterization: that the risk of lung puncture was a known and reasonable risk associated with an intercostal nerve block. If the risk of a punctured lung is a known and reasonable risk associated with an intercostal nerve block procedure, as the Holts asserted in their complaint, we fail to see how the intercostal nerve block was "an unrelated medical procedure on another part of Mr. Holt's body" as insisted by the Holts on appeal.
¶ 15. Second, the doctrine of res ipsa loquitur should be cautiously applied. Powell v. Methodist Health Care-Jackson Hosps., 876 So.2d 347, 349 (¶ 7) (Miss.2004) (citing Winters v. Wright, 869 So.2d 357, 363 (Miss.2003)). "A jury may not presume negligence because of the untoward results of surgery." Latham v. Hayes, 495 So.2d 453, 459 (Miss.1986) (citing Ross v. Hodges, 234 So.2d 905, 909 (Miss.1970)). The elements of res ipsa loquitur require that:
1) the instrumentality causing the damage must be under the exclusive control of the defendant,
2) the occurrence must be such as in the ordinary course of things would not happen if those in control of the instrumentality used proper care, and
3) the occurrence must not be due to any voluntary act on the part of the plaintiff.
Coleman v. Rice, 706 So.2d 696, 698 (¶ 10) (Miss.1997) (citing Read v. Southern Pine Electric Power Ass'n, 515 So.2d 916, 920 (Miss.1987)). The Mississippi Supreme Court has outlined the proper role of res ipsa loquitur in the context of medical negligence:
The real question, generally, is whether or not in the process of the operation any extraordinary incident or unusual event, outside of the routine of the action of its performance, occurred, and beyond the regular scope of its customary professional activity in such operations, which, if unexplained, would themselves reasonably speak to the average man as the negligent cause or causes of the untoward consequence.
Powell, 876 So.2d at 349 (¶ 7) (emphasis added) (citing Winters v. Wright, 869 So.2d 357, 363 (¶ 12) (Miss.2003)). Applying the preceding standard to the case at bar, we must determine whether the lung puncture suffered by Mr. Holt during the intercostal nerve block procedure was an "extraordinary incident or unusual event, outside of the routine of the action of its performance . . . which, if unexplained, would . . . reasonably speak to the average man as the negligent cause or causes" of Mr. Holt's injuries. Id.
¶ 16. The Holts rely upon Coleman v. Rice in support of their claim that res ipsa loquitur is applicable to the instant case. In Coleman, a laparotomy sponge was left inside a patient during a hysterectomy, causing the patient to experience complications after the surgery. Coleman, 706 So.2d at 697 (¶ 1). The court in Coleman explained that "[a] layman can understand, without expert testimony, that the unauthorized *290 or unexplained leaving of an object inside a patient during surgery is negligence." Id. at 698 (¶ 11); see also Long v. Sledge, 209 So.2d 814 (Miss.1968) (holding that where a foreign object was left inside a patient, the burden shifted to the defendant to exculpate himself from the presumption of negligence); Saucier v. Ross, 112 Miss. 306, 73 So. 49 (1916) (holding that directed verdict for the physician was inappropriate where physician left a drainage tube and packing gauze inside a patient). Consequently, the Coleman court held that the plaintiff "was not required to support her claim, based on res ipsa loquitur, with expert testimony." Id. at 698-99 (¶ 11).
¶ 17. In contrast to the situation presented in Coleman, our supreme court reasoned in Latham v. Hayes that the injury at issue was not an "extraordinary incident or unusual event" in support of the conclusion that res ipsa loquitur was inapplicable to the facts of that case. Latham v. Hayes, 495 So.2d 453, 459 (Miss. 1986). Important to the court's finding that the injury was not an "extraordinary incident or unusual event" was the fact that the injured nerve "ran through the surgical field." Id. (citing Palmer v. Clarksdale Hosp., 206 Miss. 680, 697, 40 So.2d 582, 585 (Miss.1949)) (stating that where an injury occurs to a healthy part of the body which is not within the area covered by the operation, an inference of negligence arises and requires the defendant to explain the unusual result). In the case sub judice, there is no evidence in the record suggesting that Mr. Holt's injuries were not within "the surgical field" or which otherwise demonstrates the extraordinary or unusual nature of Mr. Holt's injuries.[4] Furthermore, as previously discussed, even the Holts' claim based on informed consent, which characterizes the risk of lung puncture as "known" and "reasonable," precludes the application of res ipsa loquitur. See id. (stating that the appellant's attempt to prove that mention of the possibility of nerve injury was required in order to give informed consent demonstrated that the injury to the seventh cranial nerve was not an "extraordinary incident or unusual event").
¶ 18. We find that the facts presented in the instant case are more closely analogous to the facts of Latham than to the facts of Coleman. Unlike the situation in Coleman where it was quite obvious that leaving a sponge inside a patient's body was unusual and extraordinary, there is no evidence before this Court which engenders a similar conclusion as to Mr. Holt's injuries. Without a medical expert to explain why the injury suffered by Mr. Holt was unrelated to the intercostal nerve block and an expert's explanation as to where the medical procedure was to be performed in relation to the location of the lung puncture, we cannot blindly accept the Holts' contention that Mr. Holt's injuries occurred "during an unrelated medical *291 procedure on another part of Mr. Holt's body." It follows that the second element of res ipsa loquitur, requiring the injury to "be such as in the ordinary course of things would not happen if those in control of the instrumentality used proper care," has not been satisfied in the case at bar.
¶ 19. For the foregoing reasons, we find the "layman's" exception and the doctrine of res ipsa loquitur to be inapplicable to the case sub judice. Accordingly, without an expert to establish the applicable standard of care, breach, and causation elements of medical negligence in this case, the Holts produced insufficient evidence to withstand Dr. Summers's motion for partial summary judgment. We therefore affirm the judgment of the circuit court.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, ISHEE AND ROBERTS, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.
NOTES
[1] In their notice of appeal, the Holts claimed that they were appealing both the partial summary judgment and the dismissal with prejudice for failure to prosecute. In their brief, however, the Holts failed to include any argument or authority relating to the dismissal with prejudice for failure to prosecute; therefore, we are not obligated to consider this assignment. See Smith v. Dorsey, 599 So.2d 529, 532 (Miss.1992) (stating that since the appellant did not cite any authority or devote any discussion to the alleged errors, the court could not assess the issues on the merits and was not obligated to consider the assignments).
[2] Clyde Douglas Holt sought damages for extreme pain and suffering, mental anguish and anxiety, discomfort, and past and future medical expenses; his wife, Mable Holt, sought damages for loss of consortium and mental anguish and anxiety she suffered as a result of her husband's injuries.
[3] We note that the Holts never asserted in their pleadings or interrogatory responses that the lung puncture, in and of itself, was negligent or that res ipsa loquitur was adequate to demonstrate such negligence. The record reflects that the Holts made these assertions for the first time in "Plaintiffs' Memorandum of Authorities in Support of Denial of Defendant's Motion for Partial Summary Judgment." Nevertheless, we will address these arguments as they were before the circuit court when the partial summary judgment was granted, and Dr. Summers's brief does not challenge the procedural viability of these arguments. In any event, as will be shown, we find no merit to these arguments, and thus our decision is not affected.
[4] In his brief, Dr. Summers gives technical detail explaining that the intercostal nerve is located in the deep tissue between the ribs and immediately over the lungs. An intercostal nerve block involves an injection into the intercostal nerve and necessarily involves a risk of lung puncture, or pneumothorax. Dr. Summers provides these facts to demonstrate that Mr. Holt's injuries were not extraordinary or unusual, citing Latham for legal support. While the Holts have not questioned the accuracy of the information provided in appellee's brief regarding the relationship between the intercostal nerve block and the lungs, there is no evidentiary basis in the record to support the information contained in Dr. Summers's brief nor does the record reflect that this information was before the circuit court on motion for partial summary judgment. Consequently, we cannot rely on this information as the basis for our opinion. We rely instead on the failure of the Holts, who had the burden of proof, to offer evidence to the contrary.