CARLTON, J.,
dissenting.
¶ 17. I disagree with the majority’s conclusion that the trial court erred in granting the Appellees’ motion for summary judgment. Accordingly, I respectfully dissent. I find that Dr. Felipe Urdaneta’s testimony failed to establish the standard of care, and even if a standard of care was established, there exists no genuine issue of material fact as to the elements of breach and causation. Therefore, I would affirm the trial judge’s grant of summary judgment in favor of the Appellees.
¶ 18. The majority concludes that Dr. Urdaneta established that the standard of care for anaesthesiologists included visually inspecting the IV site and the extremity, as well as feeling the extremity during surgery to check for pressure due to extra-vasation. I find that Dr. Urdaneta’s testimony as to this standard of care was tenuous at best, and his testimony utterly failed to establish this as the standard of care. At most, his testimony established a standard of overall and constant vigilance, which was met in this case. Dr. Urdane-ta’s testimony was succinctly and, in my view, accurately summarized by the trial judge in her order as follows:
Dr. Urdaneta testified that it is his practice to visualize an IV site such as Northrop’s during surgery. He was repeatedly questioned about whether this was the standard of care. He testified that this was not a standard of care in and of itself. Nor was he able to point to any treatise, guideline or such making visualization of an IV site a standard of care. Dr. Urdaneta could not say how often or how many times during a surgery the site should be visualized. He admitted that there is no standard which would give any doctor or nurse anesthe-sist a guide as to when this visualization should take place. Dr. Urdaneta did, however!,] testify that the standard of care in his opinion was basically that of constant and overall vigilance on the part of anaesthesiologists or anesthetists.
¶ 19. Because Dr. Urdaneta testified that visual inspection of the IV site and the extremity and feeling the extremity was his 'personal practice, as distinguished from the nationally recognized practice, I find that his testimony was insufficient to establish this as the standard of care. See generally, Young v. Univ. of Miss. Med. Ctr., 914 So.2d 1272, 1276(15) (Miss.Ct.App.2005) (“Mississippi physicians are bound to adhere to nationally recognized standards of care and have a duty to exercise reasonable and ordinary patient care.”) (citing Palmer v. Biloxi Reg’l Med. Ctr. Inc., 564 So.2d 1346, 1354 (Miss.1990)).
¶ 20. Further, as noted by the trial judge, Dr. Urdaneta was unable to state how often or how many times the IV and/or the extremity should have been visually inspected throughout Northrop’s surgery. Thus, his criticism of the Northrop’s care is virtually reduced to this: the Appellees could have discovered the extravasation earlier. “ ‘Absent expert medical testimony which (a) articulates the duty of care the physician owes to a particular patient under the circumstances, [and] (b) identifies the particular(s) wherein the physician breached that duty and caused *393 injury to the plaintiff patient, the plaintiffs claim for negligence ... must fail.’ ” Paepke v. N. Miss. Med. Ctr. Inc., 744 So.2d 809, 811(9) (Miss.Ct.App.1999) (quoting Phillips v. Hull, 516 So.2d 488, 491 (Miss.1987)). Because Dr. Urdaneta was unable to articulate a particular standard from which the Appellees’ deviated, I find that the trial judge properly granted the Appellees’ motion for summary judgment.
¶ 21. Assuming for argument’s sake that Dr. Urdaneta’s testimony minimally sufficed in establishing a standard of care, I find that the evidence failed to create a genuine issue of material fact as to whether the Appellees breached the standard of care and whether Northrop’s injuries were proximately caused by any such breach. It is undisputed that extravasation can occur suddenly and without warning. Indeed, Dr. Urdaneta testified that the extravasation’s occurrence itself did not indicate that the Appellees were negligent.[4] There was no evidence presented that established either the cause of the extravasation or at what point during the surgery it occurred. In fact, Dr. Ur-daneta testified that the extravasation could have occurred at any time during Northrop’s surgery, even as late as five minutes before it was discovered. Additionally, it is undisputed that once the ex-travasation was discovered, the response was handled properly. As the trial judge found, “[tjhere is nothing to show that the injury or result would have been any different with visualization during surgery than that which occurred without the visualization of the IV site.” In my opinion, the evidence is simply insufficient to create a genuine issue of material fact as to whether Northrop’s injuries were proximately caused by the Appellees’ breach of the standard of care.
¶ 22. In light of the foregoing, I would affirm the trial judge’s grant of summary judgment in this case.
BARNES, J., Joins this separate written opinion.

. The trial judge cited relevant authority and explained her rational in her order granting summary judgment, wherein she stated:
In Brown v. Baptist Mem’l Hosp.-DeSoto, Inc., 806 So.2d 1131 (Miss.2002), the court addressed a similar situation. Brown's expert as well as the defendant doctor agreed that the injury to the Brown child could have been caused by factors other than any negligence of the defendants. That injury was a known complication of delivery of a child. The defendant doctor testified that he did not know when the injury occurred. Brown's expert agreed. Brown’s expert testified that he could not determine the quality of the defendant doctor's performance due to deficiencies in documentation of what had occurred. That lack of documentation, in the expert’s opinion, prevented him from telling whether or not the defendant doctor had handled the matter properly. The court affirmed the granting of summary judgment, finding that there was no showing that the doctor had "deviated from the requisite standard of care and the facts do not permit an application of the doctrine of res ipsa loquitur to fill that void.” Id. at 1135(19).
Northrop’s case is similar to that in Brown, supra. It is not disputed that an extravasation can occur with any IV. It is also undisputed that no one can identify any cause of the extravasation in this case. Nor can anyone say when the extravasation occurred. Northrop maintains, as did Brown, that it is the inaction (lack of visualization of IV site versus lack of complete documentation in Brown's case) of the Defendant[s] which causes him to be unable to say when the extravasation occurred. The fact remains that no one can say that Defendants deviated from any standard of care in failing to visualize the IV site or that any such failure caused any injury or damage to Northrop.